HURLEHY *v.* MARTINE *et al.*

(*Supreme Court, General Term, Third Department.* May 26, 1890.)

FALSE IMPRISONMENT—CERTIFICATE OF INSANITY—LIABILITY OF PHYSICIANS.

Where the certificates provided for by Laws N. Y. 1874, c. 446, § 1, forbidding the confinement of any person in any asylum except on the sworn certificate of two physicians setting forth the insanity, are false, fraudulent, and malicious, the physicians making them are liable to an action for false imprisonment.

Appeal from circuit court, Warren county.

Action by Julia A. Hurlehy against Godfrey R. Martine and James Ferguson. The complaint alleged that proceedings were instituted to have plaintiff declared a lunatic, and placed under restraint as such; that defendants assumed, as physicians, to hold an inquest as to plaintiff's sanity, and made a certificate that she was insane; that plaintiff was in fact sane; that the cer-

tificate made by defendants was false, and known by them to be false when they made it, and that defendants were actuated by malice; and that by means of this false and illegal certificate plaintiff was confined in an asylum for over two years, whereby she was deprived of her liberty, and greatly damaged, etc. A nonsuit was ordered, and from the judgment entered plaintiff appeals. Laws N. Y. 1874, c. 446, § 1, provides that no person shall be committed to or confined in any asylum, public or private, or in any institution, home, or retreat for the care and treatment of the insane, except upon the certificate of two physicians, under oath, setting forth the insanity of such person.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*W. F. Hickey,* for appellant.　　*L. M. Brown,* for respondent.

LEARNED, P. J.　There is much in the complaint which seems to have no proper connection with the alleged cause of action, and there are allegations which are quite peculiar; as that defendants, as practicing physicians, pretended to hold an inquest as to plaintiff's lunacy, and that not a witness was sworn, or any testimony taken, on the inquisition. We do not understand how such an inquest can be held; but we suppose that the complaint means that the defendants signed the certificates provided for in section 1, tit. 1, c. 446, Laws 1874; and the complaint alleges in an obscure manner that they did this falsely and maliciously, and that the "inquisition was false and fraudulent." It further alleges, in substance, that on these certificates the plaintiff was confined in the Hudson River Hospital about October 27, 1882, and there remained two years and five months. The answer, denying the allegations generally, pleads also the statute of limitations. On the trial it was admitted that the certificates were granted October 28, 1882, and the action commenced October 13, 1888, and that plaintiff was committed to the asylum, and remained there about two years and five months, and was discharged April 1, 1885. The court held that the plea of the statute of limitations was good, that the gist of the action was false imprisonment, and that, as to the statute of limitations, the action came under section 384, Code Civil Proc., and granted a nonsuit; that is, the court held that the two-years limitation applied. The only question is whether this holding was correct.

The question, then, is whether the maliciously making of false certificates authorized by the act aforesaid, under which, with the approval of the judge, a person is confined in an asylum, renders the persons making the certificates liable to an action for false imprisonment in case such certificates are false, fraudulent, and malicious. It must be observed, in the outset, that the question whether any cause of action is alleged in the complaint is not before us. There was no demurrer. The case comes up as on a trial of fact, and the only matter decided was that the action was one for false imprisonment, and was therefore barred by the statute. We must assume, therefore, that enough was alleged in the complaint, or could have been proved on the trial, to sustain a recovery, had it not been for the statute of limitations. Now, if we look at the statute of 1874 above cited, we shall see that all the physicians have to do is to give a certificate setting forth the insanity. The statute does not say that these certificates authorize or direct the confinement of the person. Section 1, tit. 1, only forbids the confinement without such certificates. These certificates are not directed to the person in charge of any insane asylum. They do not purport to specify where or by whom the person is to be confined. Section 5 authorizes the county superintendent of the poor to send a lunatic to a state lunatic asylum. Section 6 speaks of the neglect of a committee or guardian to confine a lunatic, and authorizes an application to a judge, in certain cases, for a warrant. But nowhere are these certificates mentioned in section 1 made the authority under which the keeper of an asylum is to confine a lunatic. Of course, the defendants in this case did not themselves imprison the plaintiff, but the plaintiff does not aver that she has

suffered any actual damages, except by the false imprisonment. It is not alleged that the certificates were a libel on her, and have thus done her injury; and, indeed, if they were libelous, the same limitation would apply as to an action for false imprisonment. Code Civil Proc. § 384. But the gist of the action, that is, the injury suffered, was the false imprisonment. The certificates did the plaintiff no harm except either as libels, or as causing her unlawful imprisonment. The case is in some degree analogous to an action against an attorney who has instituted proceedings of some kind which have resulted in the imprisonment (alleged to be unlawful) of the plaintiff; and, although the certificates of the physicians do not direct the superintendent of an insane asylum to imprison the lunatic, still, if the lunatic is thereby wronged, and if the physicians are liable, it would seem that the lunatic was wronged only by the imprisonment, and that it would only be for such imprisonment that the physicians could be liable. If the alleged lunatic had never been confined, what damages could have been recovered? It might be urged that the action was to recover damages for a personal injury from negligence. Id. § 383. Even if that view were correct, (and we need not say that a similar case might not come under that section,) still the action would be barred by the limitation there prescribed. The judgment should be affirmed, with costs.