ADA M. BRUSH, Appellant, *v.* WALTER LINDSAY and Another, Respondents.

Second Department, October 17, 1924.

False imprisonment — complaint and opening by counsel show that plaintiff was committed to hospital for insane in 1910 without hearing on willfully false affidavits by defendants — plaintiff was released on habeas corpus in March, 1920 — complaint was dismissed on opening of plaintiff's counsel — practice of dismissing complaint on opening of counsel is dangerous — action was commenced in December, 1920 — defendants, under allegations in complaint and statements on opening, are responsible for detention of plaintiff until her release — limitation of actions — illegal imprisonment constituted new trespass every day it continued — action commenced within two years after release of plaintiff not barred by two-year Statute of Limitations, Civil Practice Act, § 50 — whether plaintiff is barred by failing to take advantage of legal means to determine legality of detention cannot be determined on complaint.

The practice of dismissing the complaint upon the opening of plaintiff's counsel in an action triable by jury is dangerous. Unless it is obvious that under no circumstances and in no view of testimony that might be adduced can the plaintiff prevail, the complaint should not be dismissed on the opening of counsel alone.

The complaint in an action for false imprisonment should not be dismissed on the opening of counsel for the plaintiff, where the allegations of the complaint and the opening statement by counsel show that the plaintiff was committed to a hospital for the insane upon willfully false affidavits, made by the two defendants, who were practicing physicians, without any personal examination of the plaintiff; that the county judge made the order of commitment relying upon the affidavits of the defendants who made oath that service of notice of the application for commitment upon the plaintiff would aggravate her condition; that the plaintiff was not insane at the time she was committed or at any time prior thereto; that the defendants knew that the statements in their affidavits were false and made the affidavits for the purpose of injuring and damaging the plaintiff; that the plaintiff was committed to the insane asylum in 1910 and was discharged on habeas corpus proceedings instituted in March, 1920 by a nurse in the hospital.

The responsibility of the defendants for their illegal action in causing the plaintiff to be committed to a hospital for the insane did not cease at the moment she entered the hospital. The wrong was a continuing one and the defendants' responsibility continued until the plaintiff was discharged.

The illegal imprisonment of the plaintiff, which was caused by the wrongful acts of the defendants, constituted a new trespass every day it continued, and, therefore, an action commenced in December, 1920, which was about nine months after plaintiff's release from the hospital, was not barred by the two-year Statute of Limitations contained in section 50 of the Civil Practice Act, as to the period of unlawful imprisonment within two years prior to the commencement of the action.

The court cannot consider, in determining the question whether or not the complaint was erroneously dismissed on the opening of plaintiff's counsel, whether or not the plaintiff's right of action is barred by her failure to take advantage of any of the legal means for determining the legality of her detention. This question must be considered on the trial.

RICH and YOUNG, JJ., dissent in part.

APPEAL by the plaintiff, Ada M. Brush, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Westchester on the 21st day of May, 1923, upon the dismissal of the complaint on the opening of plaintiff's counsel, and also from an order entered in said clerk's office on the 11th day of May, 1923, granting defendants' motion to dismiss the complaint in an action to recover damages for false imprisonment.

*Clarence Alexander*, for the appellant.

*Lloyd Paul Stryker*, for the respondents.

KELLY, P. J.:

In *Malcolm* v. *Thomas* (207 App. Div. 230; affd., 238 N. Y. 577), which was an appeal from a judgment dismissing the complaint upon the opening of plaintiff's counsel, we said: " This appeal illustrates anew the danger of a dismissal of the complaint upon the opening of plaintiff's counsel in an action triable by jury. Unless it is obvious that under no circumstances and in no view of testimony that might be adduced can the plaintiff prevail, the practice of dismissing on the opening of counsel alone should not be encouraged."

Let us see what is before us for decision on this appeal. Of course we are not deciding the case on the merits. We do not pass upon the question whether plaintiff's very serious charges against the defendants are true or untrue. Defendants deny the truth of the charges made against them.

On this motion for nonsuit we must resolve the allegations of the complaint and the material facts as stated by plaintiff's counsel on his opening with all reasonable inferences therefrom, in favor of the plaintiff.

Plaintiff's counsel in his opening address to the jury in the case at bar stated that the defendants were physicians and medical examiners in lunacy; that without making any examination of the plaintiff, they made affidavits that she was insane, and that upon these affidavits the county judge of Suffolk county made an order committing plaintiff to one of the State hospitals for the insane. Counsel said that the county judge made the order of commitment relying on the affidavits or certificates of the defendants, and that defendants made oath that service of notice of the application for commitment upon plaintiff would aggravate her condition and cause serious trouble, and that the county judge upon such affidavits dispensed with such notice and that plaintiff was forcibly taken from her home to the hospital without notice or warning of any kind. He further stated that plaintiff was kept in the hospital closely confined for ten years less two months, when she was released by order of a justice of the Supreme Court on a habeas corpus proceeding instituted by a nurse in the hospital who believed plaintiff to be sane. Counsel stated to the jury that the justice who issued the writ saw plaintiff and heard her testify, and discharged her from imprisonment as sane, and that at the hearing upon the writ one of the defendants testified that he had never made an examination of plaintiff prior to signing the affidavit or certificate which resulted in her commitment. The Insanity Law (§ 81) provides that the medical examiners in lunacy signing a certificate of lunacy "shall jointly make a final examination of the person alleged to be insane within ten days next before the granting of the order. The date of the certificate of lunacy shall be the date of such joint examination." Turning to the complaint which defendants' counsel referred to as ground for his motion to dismiss, we find that plaintiff alleges that the statements made by defendants in their affidavits which were sworn to on May 31, 1910, were false and untrue; that plaintiff was not at that time, or at any time prior thereto, insane or a subject for custody or treatment in any institution for the insane; that defendants knew that the statements in their affidavits were false and made the affidavits or certificates willfully and maliciously, knowing them to be false, with the object and for the purpose of injuring and damaging the plaintiff and causing her to be taken to and confined in an asylum or institution for the insane. The complaint alleges that on or about June 1, 1910, plaintiff was forcibly taken to the State hospital for the insane against her will, and was unlawfully, unjustly and maliciously deprived of her liberty until March 18, 1920, when she was released by the order in the habeas corpus proceeding. Plaintiff alleges that her commitment to the hospital and her confinement

therein were due wholly to the false and malicious affidavits or certificates˙ of the defendants. She alleges damages to her person, reputation and estate and prays for judgment in the sum of $250,000.

At the close of the opening statement of plaintiff's counsel to the jury, defendants' counsel moved upon the opening and the pleadings that the complaint be dismissed because it affirmatively appeared from the complaint and the opening that the plaintiff was alleged to have been incarcerated in May, 1910, and the Statute of Limitations had run against the action alleged in the complaint. The learned trial justice granted the motion.

The action was commenced by service of the summons and complaint upon defendants on December 22, 1920, nine months after plaintiff's release from the State hospital. She was imprisoned therein on June 1, 1910.

Plaintiff's counsel conceded that the action was for false imprisonment. It is provided in the Civil Practice Act (§ 50): " The following actions must be commenced within two years after the cause of action has accrued: 1. An action to recover damages for * * * false imprisonment;" and in section 60: " *Certain disabilities excluded from time to commence action.* If a person entitled to maintain an action other than for the recovery of real property, except for a penalty or forfeiture, or against a sheriff or other officer for an escape, is at the time when the cause of action accrues, either: 1. Within the age of twenty-one years; or 2. Insane; or 3. Imprisoned on a criminal charge, or in execution upon conviction of a criminal offense, for a term less than for life; the time of such a disability is not a part of the time limited in this article for commencing the action; except that the time so limited cannot be extended more than five years by any such disability, except infancy; or in any case more than one year after the disability ceases."

Counsel for defendants, respondents, asserts in his points that from the very nature of a lunacy proceeding the defendants were not and could not be responsible for a single day's detention after the day on which the plaintiff was committed to the State hospital, viz., June 1, 1910. He argues that " after the signing of the affidavit or certificate of lunacy, the medical examiners have no . further authority or jurisdiction over the incarceration. The matter then leaves their hands and authority over the insane person becomes vested in the State." That the Insanity Law (§ 82) provides that the superintendent of the State hospital may refuse to receive any person committed if in his judgment such person is not insane within the meaning of the statute, and that if received in the

hospital such person may be discharged by the State Hospital Commission (§ 94). He refers to the provision (§ 83) that a person thus committed or any relative or friend in his behalf, dissatisfied with the order of commitment, may, within thirty days, obtain a rehearing of the proceedings already had and of the order of commitment, and that the matter of his insanity may be tried by a jury. The State Commission may on their own motion order an investigation by one of their members (§ 92), and any person in custody is entitled to a writ of habeas corpus upon proper application made by him or some friend in his behalf, and that upon the return of the writ the fact of his insanity shall be inquired into and determined (§ 93). And the superintendent of the hospital may discharge a patient not held upon a criminal charge who in his opinion has recovered or whose discharge will not be detrimental to the public welfare, and the Commission may discharge a patient improperly detained (§ 94). He says the plaintiff after commitment was a " ward of the State " and in the custody of the State itself whose policy was to care for and protect her, and if possible to cure her of her disease. (Citing *Sporza* v. *German Savings Bank,* 192 N. Y. 8, 21.) He says the plaintiff availed herself of none of these rights from the time of her commitment in 1910 down to 1920, and that, therefore, her imprisonment was " due either to her own failure to assert her rights or to the fact that the authorities in charge of her did not deem that she was sane and should be liberated." He cites *Gearity* v. *Strasbourger* (133 App. Div. 701) where the court held that while defendants were liable for causing the arrest of the plaintiff without a warrant, their liability on a cause of action for false arrest and imprisonment terminated with the arraignment or preliminary hearing before the magistrate who as a judicial officer decided that the complaint sufficiently charged the plaintiff with a crime and duly held her thereon and committed her in default of bail, " for the imprisonment from that time on was by due process of law, and for it, although the original arrest was illegal and caused by the appellants, I think they are not responsible in damages in an action for false arrest and imprisonment." Counsel for respondents argues that as the defendants had neither the right nor duty to terminate the plaintiff's imprisonment they were not liable for her continued detention. The continued imprisonment, he says, was by the asylum authorities, not by the defendants, who " had no connection therewith or responsibility therefor from and after the moment of her commitment." The plaintiff alleges that she was at all times sane and that the officials in the hospital detained her therein for ten years notwithstanding their right and duty to discharge her

if they were satisfied she was sane. Therefore, defendants' claim is that notwithstanding the plaintiff's allegation that they acted maliciously with the intent to deprive plaintiff of her liberty, and that they made false affidavits that they had examined the plaintiff as required by law, whereas they had made no such examination, notwithstanding their certificate to the county judge that she was insane and that if notice of the proceedings were given to her her insane condition would be aggravated, when the county judge relying upon such representations, alleged to be false and malicious, committed the plaintiff to the hospital without notice or hearing, defendants having by these alleged unlawful means set the machinery in motion and brought her to the door of the asylum, when the door closed on her their responsibility for their alleged wrongdoing ceased and they could go on their way without responsibility for her imprisonment. This seems to me to be a remarkable proposition. One who injures his neighbor by mere unintentional negligence is liable for the consequences. If the injured party suffers damages traceable to the original wrong the wrongdoer must answer for them. If the defendants maliciously by means of false affidavits and certificates forcibly took the plaintiff from her home and procured her commitment to the hospital without notice or hearing they cannot shift their responsibility to the county judge or the hospital authorities. This is not a case like _Gearity_ v. _Strasbourger_ (_supra_) where the plaintiff was brought before a magistrate and after examination and opportunity to confront those responsible for her arrest was committed to prison in default of bail. Plaintiff had no hearing, no notice, no opportunity to answer the charge made against her and no opportunity to give bail. The defendants are not charged with negligence; they are charged with willful malicious interference with plaintiff's rights, not only in making the certificates without examination of the plaintiff but in maliciously preventing her from receiving notice or from obtaining a hearing before the county judge. If the plaintiff's allegations are true, I cannot assent to the proposition that once she reached the asylum their responsibility for their acts ceased. On the complaint and the opening of counsel I think their responsibility for her imprisonment continued down to the day she was set free. Upon the complaint and the opening of counsel it was the alleged false affidavits said to have been made willfully and maliciously which were the original cause of plaintiff's alleged misfortune, and from the time of the decision in the familiar " squib case " in 1770 (_Scott_ v. _Shepherd_, 2 W. Black. 892; S. C., 3 Wils. 403; 1 Smith L. C. 737) to date, one who wrongfully puts into operation a force likely to injure others is

liable for its natural and proximate effects, which may be immediate and direct or through the media of natural forces or other innocent causes or conditions. " Time, distance and the number and variety of the media are immaterial, except as they afford increased opportunity for the assertion of other intervening responsible causes." (1 Shear. & Red. Neg. [6th ed.] § 25a, and cases cited.) It is not enough for defendants to say that the responsibility for plaintiff's continued imprisonment was upon the hospital authorities. It is immaterial how many others may have been at fault, if the defendants' acts were an efficient cause of the injury. If the injuries caused by the concurrent acts of two persons are plainly separable so that the damage caused by each can be distinguished, each would be liable only for the damage he caused; but if this is not the case all the persons who contribute to the injury are liable jointly and severally. It is not necessary to go further to see that the dismissal upon the complaint and the opening was wrong.

With reference to defendants' claim that plaintiff's action is barred by the two-year Statute of Limitations (Civ. Prac. Act, § 50, *supra*), this depends upon the date when her cause of action accrued. If defendants' liability terminated on the day plaintiff was committed to the hospital in 1910, it would appear that they are right in their contention. If, however, her imprisonment was illegal *ab initio*, and defendants' wrongful acts were the cause of the loss of liberty, I think the illegal imprisonment constituted a new trespass every day it continued. The gist of the action for false imprisonment is the unlawful detention (*Schultz* v. *Greenwood Cemetery*, 190 N. Y. 276, 278), and certainly as to unlawful detention within two years before the commencement of the action she was not barred by the two-year Statute of Limitations. As to her right to recover for detention prior to the two-year period, we do not pass upon this question. It is not necessary to a decision of this appeal. It is true that plaintiff had not been formally adjudicated to be an insane person. " The order (of commitment) is not strictly speaking a judgment at all, for it does not affect the status of the person alleged to be insane. * * * 'The order of commitment settles nothing finally or conclusively against the person committed.'" (*Sporza* v. *German Savings Bank*, 192 N. Y. 8, 33.) Whether the plaintiff was prevented in any way from bringing an action during her confinement in the hospital and whether, if such were the case, it was chargeable to defendants so as to remove the toll of the two-year Statute of Limitations, is left for determination of the trial court upon the evidence. Upon the trial all these questions may be determined.

The claim advanced by the respondents that plaintiff should have availed herself of some of the means to recover her freedom recited by counsel, may be a subject of investigation at the trial of the issue. It is the duty of one injured to minimize the injury if it can be reasonably accomplished. We do not know what the facts are concerning these matters, whether she endeavored to do these things or why she did not make the endeavor. It may be that her failure to take action might be considered by a jury in mitigation of damages. I do not know. But we cannot assume on this motion that she consented to her imprisonment or voluntarily waived opportunity to procure her release. These matters and the evidence of the defendants in answer to her complaint should be considered at the trial.

In my opinion the decisions in *Hurlehy* v. *Martine* (56 Hun, 648; 10 N. Y. Supp. 92; appeal dismissed, 128 N. Y. 657) and *People* v. *Camp* (66 Hun, 531; affd., 139 N. Y. 87) are not at variance with the views herein expressed. These cases were decided upon the record of a trial at which all the facts were before the court.

The judgment and order should be reversed upon the law and a new trial granted, with costs to appellant to abide the event.

KELBY and KAPPER, JJ., concur; RICH and YOUNG, JJ., dissent, being of opinion that from the admitted facts the action is barred by the Statute of Limitations.

Judgment and order reversed and a new trial granted, with costs to appellant to abide the event.