SARAH SHERMAN, Plaintiff, *v.* WILLARD D. MILLARD and Others, Defendants.

Supreme Court, Oneida County, July 26, 1932.

*Edward A. Wolff*, for the plaintiff.

*Arthur S. Evans*, for the defendant Millard.

*Frank J. Ryan*, for the defendants Leicht.

*Hart, Senior & Nichols* [*Ray Nichols* of counsel], for the defendant Edick.

DOWLING, J. On May 24, 1931, defendant Millard invited plaintiff to accompany him on an automobile trip from Rome to Lowville to visit one of his relatives. She accepted his invitation. They journeyed to Lowville, made the contemplated social call and started back at nine P. M., daylight saving time. Millard was driving his eight-cylinder Willys sedan, 1930 model. It was a dark,

rainy, misty evening. Millard's car was equipped with an electric wiper, which wiped the left half of the winshield only, leaving the right half thereof coated with mist and rain, thereby obscuring the vision of the plaintiff, who was sitting on the front seat with Millard. They were proceeding southerly on the Lowville-Boonville road, which consisted of two strips of concrete, having a seven-foot shoulder on the west side and six-foot shoulder on the east side.

Plaintiff testified that she paid no attention to Millard's driving until she felt a jolt, caused by the sudden application of the brakes of the Millard car; that she then looked out, saw the Leicht car fifteen or twenty feet ahead, standing partly on the concrete and partly on the shoulder on the east side of the highway, without any lights; that the Millard car crashed into the left rear of the Leicht car, throwing her against the windshield, injuring her nose, shoulder and cutting her face so that it bled profusely.

The headlights of the Millard car were bent upwards by the impact. The lights on his car, front and rear, were burning after the collision. The Leicht car was driven forward twenty or thirty feet by the impact. Both cars stopped on the west side of the highway, partly on the shoulder and partly on concrete, facing south.

Two men, presumably defendants Millard and William M. Leicht, assisted plaintiff out of the car and brought her around in front of the same so the extent of her injuries might be ascertained. Defendant William M. Leicht swore he gave plaintiff his handkerchief to wipe away the blood.

While plaintiff, in a dazed condition, was standing in front of the Millard car leaning on the radiator, a north-bound motorist stopped on the easterly side of the road, opposite the Millard car. Millard crossed the highway and spoke to said motorist about summoning assistance and advised him to drive along in order to avoid the possibility of a collision. He then started back towards the plaintiff, but before he reached his car, the defendant Edick came down the highway, driving forty to forty-five miles per hour, and, without sounding any warning of his approach or slackening his speed, crashed into the rear end of the Millard car which was standing in neutral, with its emergency brake off, twenty-five to thirty feet behind the Leicht car. The force of the collision drove the Millard car forward, hurling plaintiff from the radiator to the pavement, and inflicting upon her grievous bodily injuries.

Upon the trial the court took the following special verdict:

" Question 1. Was the defendant William M. Leicht guilty of negligence which was the proximate cause of the first collision? Answer: Yes.

" Question 2. Was the defendant Willard D. Millard guilty of

negligence which was a concurring cause of the first collision. Answer: Yes.

" Question 3. Was the plaintiff guilty of negligence which contributed to the happening of the first collision? Answer: Yes.

" Question 4. How much damage did plaintiff suffer from injuries received in the first collision? Answer: $500.

" Question 5. Was the defendant Edick guilty of negligence which was the proximate cause of the second collision? Answer: Yes.

" Question 6. Was the defendant Millard after the first collision guilty of any negligence in the operation of his car which was the proximate cause of the second collision? Answer: No.

" Question 7. Was the second collision the natural and probable consequence of the negligence of the defendant Leicht in the first collision? Answer: Yes.

" Question 8. Was the second collision the natural and probable consequence of the negligence of the defendant Millard in the first collision? Answer: Yes.

" Question 9. Was the plaintiff able to exercise reasonable care for herself after the first collision and before the second collision while she was standing in front of the Millard car? Answer: No.

" Question 10. If the plaintiff was unable to exercise reasonable care for her own safety after the first collision and before the second collision, did the defendant Leicht use reasonable care for the protection of plaintiff from further injury? Answer: No.

" Question 11. If the plaintiff was unable to exercise reasonable care for her own safety after the first collision and before the second collision, did the defendant Millard use reasonable care for the protection of plaintiff from further injury? Answer: No.

" Question 12. If the defendant Leicht failed to use reasonable care for the protection of plaintiff after the first collision and before the second collision, was such failure a contributory cause of the collision between the plaintiff and the Millard car in the second collision? Answer: No.

" Question 13. If the defendant failed to use reasonable care for the protection of the plaintiff after the first collision and before the second collision, was such failure a contributory cause of the collision between the plaintiff and the Millard car in the second collision? Answer: No.

" Question 14. If the defendants Leicht and Millard failed to use reasonable care for the protection of the plaintiff after the first collision and before the second collision, did such failure unite and contribute to causing the collision between the plaintiff and the Millard car and to bringing about and causing the injuries which plaintiff sustained in the second collision? Answer: Yes.

" Question 15. If the plaintiff was unable to use reasonable care for her own safety after the first collision and before the second collision, was she guilty of negligence which contributed to the happening of the collision between herself and the Millard car in the second collision?    Answer: No.

" Question 16. How much damage did plaintiff suffer from injuries received in the second collision?    Answer: $15,966."

After the rendition of the special verdict, on motion of the plaintiff, a general verdict was directed against all of the defendants for $15,966.   Defendants Millard and Leicht move to set aside the verdict and for a new trial upon the grounds that the verdict is contrary to law, contrary to the evidence and upon all of the grounds specified in section 549 of the Civil Practice Act.   Defendant Edick does not join in the motion.

Said defendants specifically urge:

" (a) ·That there were two separate and distinct accidents and that it was error to submit the case on the theory of a single accident.

" (b) If there was only one accident, then the finding of the jury that the plaintiff was contributorily negligent in the first collision estops her from making a recovery for the injuries received in the second collision.

" (c) That the second collision was caused by an intervening, independent cause, for which the defendants Millard and Leicht were in no way responsible.

" (d) The finding of the jury that the plaintiff was in a dazed condition and unable to take care of herself following the first collision is against the weight of the evidence, is unsupported by any evidence, and that the charge of the Court in submitting that question to the jury was inadequate as it did not point out to the jury that before the defendants could be held negligent for failing to take care of the plaintiff, they must have reasonable grounds from which it might appear that she was in need of protection.

" (e) That the finding of the jury that the negligence of the defendant Millard and the negligence of the defendant William M. Leicht in failing to properly care for the plaintiff after the first collision was not a contributing cause to the injuries which she received in the second collision, is inconsistent with the jury's finding that their negligence in failing to properly care for the plaintiff after the first collision united and combined with the negligence of the defendant Edick to produce the injuries which she received in the second collision, and that the effect of their finding is to exonerate both of these defendants from liability for any damage sustained by the plaintiff in the second collision.

" (f) That the submission of question No. 15, *supra,* was error."

The contention that there were two separate and distinct accidents cannot be sustained. There was but one accident in three phases. The train of events set in motion by defendants William M. Leicht and Millard in the first collision were still on the march when the second collision occurred and when plaintiff was struck by the Millard car. (*Rider* v. *Syracuse R. T. Ry. Co.,* 171 N. Y. 139, 148.)

The finding of the jury that plaintiff was contributorily negligent in the first collision is questionable, if not clearly against the weight of the evidence. (*Nelson* v. *Nygren,* 259 N. Y. 75.)

Defendants Leicht and Millard contend that plaintiff's contributory negligence bars her from recovery for the damages she sustained in the second collision, on the theory that it continued over and contributed to the happening of the second collision. The jury found, on sufficient evidence, that plaintiff was in a dazed condition immediately following the first collision and was unable to properly care for her own safety. This being so, her contributory negligence became remote and was not a proximate or contributing cause of the second collision, either between herself and the Millard car or between the Millard and Edick cars. She did not voluntarily place herself in front of the Millard car and was not aware that she was in that position. Her negligence was antecedent to the second collision. (*McKeon* v. *Steinway R. Co.,* 20 App. Div. 601, 604; 2 Thomp. Neg. § 1995, p. 665.) Only a responsible human being can be guilty of contributory negligence. At the time of the second impact, plaintiff was not such a being. (*Rider* v. *Syracuse R. T. Ry. Co., supra,* 147, 149, 150; *Davies* v. *Mann,* 10 M. & W. 546; *Weitzman* v. *Nassau El. R. R. Co.,* 33 App. Div. 585, 590; *Austin* v. *New Jersey Steamboat Co.,* 43 N. Y. 75, 82.)

The contention that the second collision was the result of an independent, intervening cause, namely, the negligence of the defendant Edick, is more troublesome. " An intervening agency, to render an original wrong a remote cause, must be independent of such wrong, adequate to produce the injury, so interrupting the natural sequence of events, as to produce a result different from what would have been produced, and one that could not have been reasonably anticipated from the original wrong." (*Lemos* v. *Madden,* 28 Wyo. 1; 200 Pac. 791.) It must turn aside the natural sequence of events (*Hartman* v. *Atchison, T. & S. F. Ry. Co.,* 94 Kan. 184; 146 Pac. 335) and destroy the causal connection. (*Davenport* v. *McClellan,* 88 N. J. Law, 653; 96 Atl. 921.) It must

be a new, independent force which becomes the direct and immediate cause of the injury. (*Phillabaum* v. *Lake Erie & W. R. Co.*, 315 Ill. 131; 145 N. E. 806.) It must be sufficient to stand as the cause of the injury and be one but for which the injury would not have occurred. Merely accelerating the original cause is not enough. It must have superseded the original act or been itself responsible for the injury. (45 C. J. § 490, p. 929.) The test is not to be found in the number of intervening agencies or events but in their character. (45 C. J. § 489, p. 926.) When an intervening cause is set in operation by an original wrongful act, the person who set the original cause in operation will not be relieved from liability. (45 C. J. § 492, p. 932.) " If the occurrence of the intervening cause might reasonably have been anticipated, such intervening cause will not interrupt the connection between the original cause and the injury." (45 C. J. § 493, p. 934.) " The exercise of ordinary care requires precaution as well against the extraordinary as against the ordinary. It is only the unforseeable in the exercise of ordinary care, or the act of God, that exculpates the negligent wrongdoer." (*Daly* v. *State of New York*, 226 App. Div. 154, 157; *Woodruff* v. *Oleite Corp.*, 199 id. 772, 774.)

The negligence of Edick was a concurrent rather than an intervening cause. Causes are concurrent when they act contemporaneously and together cause an injury which would not have happened in the absence of either. (45 C. J. §§ 485, 486, 488, pp. 920, 926.) " If the negligent acts of two, or more, persons concur in contributing to an accident, the injured person may hold them, jointly and severally, liable. Where concurrence in causes is charged, the test is, simply, could the accident have happened without their co-operation? " (*Hancock* v. *Steber*, 208 App. Div. 455, 457.) " Guilty, or responsible, concurrence in causing an injury involves the idea of two, or more, active agencies, co-operating to produce it; either of which must be an efficient cause, without the operation of which the accident would not have happened. * * * In every such case, the question is what was the proximate cause of the occurrence and, if concurrence in negligence is claimed, were the acts, or omissions of the parties so closely related and co-operative as to make either a probable and an efficient cause? Could it be said of each cause that without its operation the accident would not have happened? " (*Leeds* v. *N. Y. Telephone Co.*, 178 N. Y. 118, 121.)

The proximate cause of an event is " that which in a natural and continuous sequence, unbroken by any new cause, produces

that event, and without which that event would not have occurred; and the act of one person cannot be said to be the proximate cause of an injury, when the act of another person has intervened and directly inflicted it." (*Laidlow* v. *Sage*, 158 N. Y. 73.)

"The act of a party sought to be charged is not to be regarded as a proximate cause unless it is in clear sequence with the result and unless it could have been reasonably anticipated that the consequences complained of would result from the alleged wrongful act; that if the consequences were only made possible by the intervening act of the third party which could not have reasonably been anticipated, then the sequential relation between act and results would not be regarded as so established as to come within the rule of proximate cause." (*Saugerties Bank* v. *Delaware & Hudson Co.*, 236 N. Y. 425, 430.) "But it is generally held, that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." (*Milwaukee & St. Paul Ry. Co.* v. *Kellogg*, 94 U. S. 469, 475.) "The degree of probability rises by almost imperceptible gradations." (*Lemos* v. *Madden*, 28 Wyo. 1; 200 Pac. 794.) "Legal or proximate cause is always dependent upon the facts of a particular case, and it is for this reason that the words are beyond definition or conclusive explanation. Very often it is confused with the preliminary question whether there is any negligence at all. * * * negligence does not exist unless there is a reasonable likelihood of danger as a consequence of the act complained of. * * * 'The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.' The possibility of an accident must be clear to the ordinarily prudent eye. * * * 'The range of reasonable apprehension is at times a question for the court, and at times, if varying inferences are possible, a question for the jury.' * * * We are, therefore, of the opinion that in this case the jury must determine whether the risk of being hurt in passing traffic was reasonably to be anticipated by those who shut off the sidewalk, and turned passersby into the street. Would the danger of such an act be apparent to the ordinarily prudent man? If so, there would be negligence. This is the measure by which we seek to determine the question of liability in tort cases through the means of a judge or jury." (*O'Neil* v. *City of Port Jervis*, 253 N. Y. 423, 433.) One who wrongfully puts into operation a force likely to injure others is liable for its natural and proximate effects, which

may be immediate and direct or through the media of natural forces or other innocent causes or conditions. " ' Time, distance and the number and variety of the media are immaterial, except as they afford increased opportunity for the assertion of other intervening responsible causes.' * * * It is immaterial how many others may have been at fault, if the defendant's acts were an efficient cause of the injury." (*Brush* v. *Lindsay*, 210 App. Div. 361, 367.) Where a series of new and unexpected causes intervene, the original act of negligence becomes remote. (*Perry* v. *Rochester Lime Co.*, 219 N. Y. 60, 64.) " The negligent act which is the proximate cause of the injury is an act which naturally and probably would produce it." (*Ragone* v. *State of New York*, 123 Misc. 48, 51.) " The law requires that the injury must so directly result from a wrongful act that, according to common experience and the usual course of events, it might under the particular circumstances have reasonably been expected." (*Hall* v. *N. Y. Telephone Co.*, 214 N. Y. 49, 52.) " There are times when the law permits us to go far back in tracing events to causes." (*Bird* v. *St. Paul F. & M. Ins. Co.*, 224 N. Y. 47, 51.)

" Causation is not a chain but a net. At each point, influences, forces, events, precedent and simultaneous, meet and the radiation from each point extends infinitely." (*Leyland Shipping Co.* v. *Norwich Fire Ins. Society*, 118 L. T. 120, 125.) " Proximate cause is the efficient cause, and one that necessarily sets the other causes in operation. It is not always the cause nearest in time and place to the accident, for that is sometimes merely incidental to a superior or controlling agency. It is only when causes are independent of each other that the nearer is, of course, to be charged with the disaster." (*Monahan* v. *Eidlitz*, 59 App. Div. 224, 227; *The G. R. Booth*, 171 U. S. 450.) Supposing " a man who by reason of intoxication lies down under a tree and a storm blows a limb down upon him and kills him or lightning strikes the tree and kills him," the falling of the limb and the bolt of lightning are independent, intervening causes which directly produced death, " and their fatal effect was not owing to the victim's intoxication." But if an intoxicated man falls into the water and drowns, the water is the immediate, but the intoxication is the proximate cause of death. (*Davis* v. *Standish*, 26 Hun, 608, 613, 615.) Where a county clerk entered the Christian name of the judgment debtor, instead of his surname, in the docketing of a judgment and an abstract company delivered a search without showing the existence of the judgment, the court held it was a question of fact as to whether or not the action of the abstract company was such an intervening, efficient cause of the injury to the party who relied upon the abstract as to exclude a finding

of fact that the negligence of the county clerk in making the record was the proximate cause of the injury. (*Cole* v. *Vincent*, 229 App. Div. 520, 524.) A child fell through a hole in a canal bridge into the water below. His father plunged in to rescue him. Both were drowned. Held, that there was no break in the chain of causes by the intervening of a new agency and found that the negligence of the State in allowing the bridge to be in a defective condition was the proximate cause of the accident. (*Gibney* v. *State*, 137 N. Y. 1, 5, 6.) " The tendency of the authorities has been to refer the accident to the original fault which set in motion the circumstances culminating in the injury." (*Williams* v. *Koehler & Co.*, 41 App. Div. 426, 428.)

The first collision was still in process when the second collision occurred. The duty of the drivers of the first two cars was to remove them from the highway immediately after the collision. They made no effort to do so but negligently allowed them to block the highway. Any reasonably prudent person would have antici-pated that a collision with a third car was likely if the first two cars were permitted to remain on a much-traveled highway, on a dark, rainy night, in an outlying district. Millard and William M. Leicht could easily have pushed their cars onto the shoulder out of harm's way. They did not do so. They took no steps to warn south-bound traffic of the presence of their cars on the high-way or to remove plaintiff from a position of danger. If the first two cars had not collided and been left on the highway, or if they had been removed from the highway after they had collided, the Edick car could not have collided with the Millard car, or the Millard car with the plaintiff; hence, there was continuing negli-gence upon the part of the defendants William M. Leicht and Millard. This negligence concurred with the negligence of Edick in producing the collision between the Edick and the Millard cars and between the Millard car and the plaintiff. The facts are incon-sistent with the idea that the second collision was an independent, intervening cause. It did not break the causal chain, much less the causal net. As to whether or not the negligence of William M. Leicht and Millard continued in unbroken sequence and united with the negligence of the defendant Edick to produce the second collision and the collision between the Millard car and the plaintiff was a question of fact and was properly submitted to the jury. (*Hoffman* v. *King*, 160 N. Y. 618, 625.) The jury correctly found all the defendants liable on this phase of the case and exonerated the plaintiff from negligence contributing to the injuries she received as a result of the second collision.

Defendants Leicht and Millard contend that the answers to

questions 12 and 13 are inconsistent with the answer to question 14, and that being inconsistent they are entitled to the most favorable view to be deduced therefrom.

Having concluded that the jury were justified in finding all of the defendants liable on the theory that the negligence of the defendants William M. Leicht and Millard continued in unbroken sequence, uninterrupted by any intervening, independent cause, and united with the negligence of defendant Edick to produce the injuries sustained by the plaintiff as a result of the second collision, it is immaterial whether findings 12, 13 and 14 are inconsistent, as the verdict of the jury may well rest on this theory.

That these findings are inconsistent is not fatal so long as they are reconcilable. (*Whalen* v. *Stuart*, 194 N. Y. 495, 502.) The jury apparently supposed that, if they should find that Millard or William M. Leicht, individually, failed to properly care for plaintiff, and that such individual failure was a contributory cause of the injuries sustained by plaintiff in the second collision, they could not then find that their negligence united and contributed to causing the collision between the plaintiff and the Millard car and to bringing about and causing the injuries which she sustained thereby. They found that these two defendants failed to use reasonable care to protect her under the circumstances and that their failure to use that care was negligence and combined to produce the injuries she sustained as a result of the second collision. They owed her the duty to use reasonable care for her protection. (*Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160, 167.) Such findings were sufficient to hold said defendants liable for failure to protect the plaintiff following the first collision; hence, while findings 12 and 13 are inconsistent with finding 14, nevertheless they are reconcilable with finding No. 14. This being true, the inconsistency complained of is more fanciful than real. On this basis also the verdict is within the evidence and the law except as to the defendant Cora W. Leicht.

Defendants William M. Leicht and Millard contend that it was error to submit question No. 15 to the jury as a question of fact. Counsel apparently misapprehend the import of question No. 15. It involves the proposition that, if the plaintiff were unable, physically, to take care of herself following the second collision, but was mentally alert, was she negligent in failing to ask to be removed from a place fraught with probable peril. It likewise involved the proposition as to whether or not her contributory negligence, in the first collision, persisted throughout the entire transaction. This was clearly a question of fact and was properly submitted to the jury.

Defendants Leicht and Millard complain that the charge of the court as to the duty William M. Leicht and Millard owed to plaintiff after the first collision was inadequate because it did not point out to the jury that they were not called upon to act unless they had reasonable grounds to assume she needed assistance. Suffice to say that they were perfectly aware of her condition. They helped her from the Millard car and brought her around to the front thereof where the lights disclosed her helplessness.

If the defendants William M. Leicht and Millard are not liable upon the first theory but are upon the ground that they failed to use reasonable care to protect the plaintiff, there would remain no basis to sustain a verdict against defendant Cora W. Leicht, as the failure of her husband, who was driving her car, to use reasonable care, after the first collision, to protect the plaintiff would not be attributable to her.

The verdict is well supported by the evidence and is within the law. Motion to set aside same is denied.

Ordered accordingly.