[Civ. No. 6252. Third Appellate District.—November 20, 1940.]

NORMAN M. CUMMINGS, Respondent, v. WILLIAM KENDALL et al., Appellants.

Bronson, Bronson & McKinnon for Appellants.

Charles Reagh and Taylor F. Peterson for Respondent.

PARKER, J., *pro tem.*—Defendants appeal from the judgment rendered in favor of plaintiff. The case involves an automobile accident and was tried by the court, sitting without a jury.

Heretofore respondent moved to dismiss the appeal and the opinion of this court in denying the motion is found in 34 California Appellate Reports (2d series), at page 379 [93 Pac. (2d) 633].

Appellant at this stage of the appeal places much reliance on the language of the court in denying the motion to dismiss and inclines to the contention that the law of the case was therein announced. We are not in accord with this view. The sole question before the court on the motion to

dismiss the appeal was whether or not the issues were substantial and worthy of consideration; likewise was the question presented as to the good faith of the appeal as distinguished from a proceeding adopted merely for purposes of delay and harassment. Whatever construction might be placed upon portions of the opinion, the net result would be merely a holding that the appeal should be heard upon its merits. However, we may refer to the previous record to obviate a detailed statement of the case and avoid unnecessary repetition of the facts.

The sole question before the court for present determination is whether or not the admitted negligence of defendants did in any manner contribute to the injuries sustained by plaintiff. Stating it in another way, appellants admit negligence on their part and do not question the injuries sustained by plaintiff; but, they contend, the injuries were inflicted by causes remote and separate from the negligence of appellants.

Inasmuch as any discussion of the points presented must eventually disclose the facts, we relate, supplementing the previous recital as found in the previous opinion of this court, sufficient of the evidence to elucidate the arguments and the holding. It seems that the plaintiff was a passenger in what is referred to as the Russell car; with him were four other young men who were out on a little pleasure ride in the evening. There is no suggestion of intoxication or impropriety. In their travels they came upon the Kendall car, which is the car of the defendants and appellants. The Kendall car was parked and no one was occupying the same. The young men in the Russell car, in what is conceded to have been a joking mood, took from the Kendall car one of the seat cushions and started off. When Kendall returned to his car, with his companions, the absence of the cushion was noted and they seemed to know that the boys from the Russell car had taken it. The pursuit then began. The Russell car wandered in and out of streets and by-ways, closely followed by the Kendall car. This pursuit covered some distance and lasted some time; the Russell car eventually reached the open road with the other car following it. At a point some three or more miles out the driver of the front car decided to turn around and retrace his course, or at least to return to Crescent City. The Kendall car did likewise and the chase continued. When they reached a point near the city limits there

suddenly appeared on the highway a third car driven by one Gorbet, who, all seem to concede, was operating his vehicle under the combined influence of alcohol and gasoline. The collision occurred, though it is not clear whether Gorbet ran into the Russell car or whether the Russell car struck the Gorbet car. As far as the present controversy is concerned, it makes little difference. When the impact took place the Kendall car was approximately sixty feet behind and it was speeding along at the rate of from fifty-five to sixty miles per hour. The Russell car, which was the one in which plaintiff rode as a passenger, was thrown across the highway, having veered somewhat to the driver's left, in an attempt to reach safety. It might be here noted that both of the cars involved in the chase were travelling on the right-hand side of the highway.

The evidence shows it was a clear night; that the road-bed was dry and that both cars were equipped with sufficient headlights.

The driver of the Kendall car noted the accident ahead, as stated, when he was about sixty feet away. When he arrived at a point between sixty and forty feet from the Russell car he started to put on his brake and swerved to the left. The highway contained a gravel shoulder eight feet in width. On the edge of the shoulder there was a ditch. The highway was constructed with a crown in the center, sloping on each side of the center to the shoulders. The ditch was about three feet lower than the crown of the highway. The Gorbet car appeared on the highway suddenly. Apparently, as far as the record discloses, it just came from nowhere. The Russell car was thrown upon its right side, the left side being in the air. The car lay on the left-hand side of the road, with the front almost at right angles with the center line of the highway.

The Kendall car, after the brake was applied, swerved to the left, running down into the ditch and continued on its course to a point some sixty feet beyond the Russell car.

All parties are in accord that the Kendall car in passing struck the Russell car. But there is no evidence indicating just when or where or how this last impact took place. The occupants of the Kendall car testified that the only way they knew that their machine struck the Russell car was that the Kendall car had a dent or mark along the right top. The appellants venture the opinion, from that fact, that the Ken-

dall car struck the bumper of the Russell car. Plaintiff and respondent argue that since the bumper is only about eighteen inches above the ground, the impact of the Kendall car must have occurred while the Russell car was still in the air. But there is one other fact connected with the impact which would seem to overthrow the theory that the bumper was struck, and that is the fact that there were found on the Kendall car traces of paint from the Russell car, and it may well be assumed this paint did not come from the bumper. There was testimony from the occupants of the Kendall car that no one in that car felt any distinct shock from contact with the Russell car, and that no one in the Kendall car was injured.

The foregoing *résumé* of facts seems somewhat sketchy, but this cannot be avoided for the reason that no person seemed to know exactly what did happen. None of the witnesses for plaintiff remembered anything after the first impact, due to the fact that the shock left each of them either dazed or unconscious.

It was stated by some of the witnesses that the whole thing happened so suddenly that there was no time to observe or recollect the rapidly occurring circumstances.

The court below found negligence on the part of the appellants and it is not necessary to discuss that finding. Appellants admit the finding has support in the evidence. The court further found as follows: ''the same instant following the collision first aforesaid [being the collision with the Gorbet car] said truck ran violently upon, against and into the automobile wherein plaintiff was riding as a passenger and by and through the joint co-operative force of said collisions which were then and there virtually simultaneous, plaintiff was thrown with great force and violence into, upon and against certain portions of the automobile wherein he was riding'', as a result of which he, plaintiff, sustained the injuries complained of. It may be noted that what we have referred to as the Kendall car was a light delivery truck. Throughout the trial that machine was referred to interchangeably as the Kendall car or Kendall truck.

The appellants here maintain that from such a state of facts as is here disclosed there is not the slightest support of any finding that appellants inflicted injury upon the plaintiff. The claim is urged that, whatever injuries plaintiff sustained, the proximate and sole cause thereof was the collision with

the Gorbet car and that no further injury followed the mere brushing of the Kendall car against the already overturned Russell car in which plaintiff rode as a passenger.

In presenting their appeal the question is thus stated: "Where the evidence that defendant inflicted injuries upon plaintiff is based upon conjecture and speculation, must not the judgment against defendant be reversed?"

In approaching a determination of the question here presented it must be borne in mind that the proceeding is in no sense a trial *de novo*. We are confronted with a situation in which a court of competent jurisdiction has made a finding. Our only concern is to ascertain whether the facts support the conclusion of the court. It is in nowise determinative of the question to say that with the same state of facts before us we would reach a different conclusion. If we find that the facts will support the conclusion reached by the trial court, the judgment must be affirmed. And when we speak of the factual support we must consider the facts in all of their inference-bearing strength. Almost any set of facts, properly arranged, would support a variety of conclusions, reasonable, possible or purely speculative. It is conceded that we deal with the first assumption only.

Attention is called to the recent case of *Hamilton* v. *Pacific Electric Ry. Co.*, 12 Cal. (2d) 598 [86 Pac. (2d) 829]. In this case the subject of inferences is discussed at length and many authorities are cited. Without analyzing the cited case, it will suffice to say that it re-affirms the rule in this jurisdiction that where all of the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may be fairly and reasonably deduced from those facts, the determination of a jury or the trial judge may not be interfered with by an appellate court. The finding of the trial judge on that issue cannot be set aside on the ground that it is not sustained by the evidence. The court further states:

"The facts that some inference other than that which has been drawn by a jury may appear to an appellate tribunal to be the more reasonable, affords no sufficient reason for disturbing the inference in question. It also appears to be well established law that notwithstanding the fact that the evidence upon which the inference is founded is undisputed or without conflict, an appellate court has not the power to draw an inference different from that which the jury has deduced."

And likewise in the case of *Crawford* v. *Southern Pacific Co.*, 3 Cal. (2d) 427 [45 Pac. (2d) 183], we find it stated:

"When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

The trial court may make findings based upon reasonable inferences supported by the evidence. (*Rideout* v. *City of Los Angeles*, 185 Cal. 426 [197 Pac. 74].)

While these settled principles serve as guides, we still are confronted with the task of drawing a definite line between reasonable deductions and those which might be classed as arbitrary or unreasonable, with no guide other than the individual opinion of one called upon to consider the facts. There are many factors aiding in a reasonable conclusion which are presented to the trier of facts in the first instance and not available to one going over the cold record. There is what might be called the "feel" of the case. This embraces a consideration of the witnesses, the manner in which they testify and their general attitude in the court room. It embraces likewise the conduct of counsel. It is well known that in the trial of a cause all counsel may tacitly concede certain things and yet the record may not disclose this result. The cases sometimes speak of facts in an apparently meaningless sense. Facts are merely portions of the framework of conclusions. A fact that will support no conclusion is a negative quantity and it may be stated that the conclusion makes the fact, rather than that the fact supports the conclusion.

Without getting too far into the field of metaphysics or losing ourselves in the domain of psychiatry we may return to the instant case and see what, if anything, supports the trial court's finding.

The trial court was justified in inferring that the Kendall car was in pursuit of the Russell car. While the witnesses stated that they were just following the car awaiting the time when it would stop and then get the cushion, the undisputed fact was that all of the parties considered the taking of the cushion to have been just a prank and in no sense a theft, so that there was no thought of losing any property. Particularly was this true in view of the fact that all of the parties lived in the same town and were well acquainted. The court then might have inferred that a chase through the streets of a town or city was in itself a reckless thing and manifested a lack of any care or thought of what

might happen. On a clear night and a dry highway there was no reason why those in the Kendall car could not see exactly what was happening one hundred yards ahead of them. With the eyes of the driver of the Kendall car focused upon the object of his chase the law itself steps in and draws the inference that "to look is to see". When such a driver states that he could not see what happened the court might well infer that he was so close on top of the occurrence that the whole thing became a jumble.

The evidence further showed that the trailing car was traveling at a speed of sixty miles per hour; this equals eighty-eight feet per second. There was, as is usual, considerable questioning by all counsel in an effort to establish distances. Finally, the court took the witness Kendall, the driver of the Kendall car, and we quote from the record:

"The Court: Q. About how many feet did you drive in your car from the time you heard the impact until the time you came in contact with the Russell car? Approximately how many feet did you drive? . . . A. When I heard the impact I was about sixty feet, I imagine. Q. You traveled a distance of approximately sixty feet after you heard the impact until you came in contact with Russell's car? A. Yes. Q. At the time you heard this noise you describe, did you see Russell's car at that particular moment? A. At the same time as the impact? Q. Yes, at the time you heard it. You heard a crash; did you see the car at that time? A. No. Q. Did you see any tail light? A. No. Q. Which way were you looking at that time, do you remember? Straight ahead, or can you recall? A. Naturally straight ahead, driving. Q. About how many miles an hour were you going at the time you heard the impact? A. Fifty to fifty-five, something like that. Q. At the time you heard the impact did you apply your brakes? A. Yes. Q. Immediately? A. No. Q. How many feet did you travel before you applied your brakes after you heard the impact? I am referring now to this crash you heard, or whatever noise it was? A. How many feet did I travel? Q. After you heard the impact, then you traveled along, when did you put on your brakes after that? How many feet did you travel before you put on your brakes? A. Applied my brakes about fifty or sixty feet from the scene of the wreck, point of the wreck. Q. At the time you applied your brakes did you see the other cars

ahead of you? A. No, I couldn't distinguish anything; dark blot. Q. What made you put your brakes on? A. Natural reaction I guess. Q. To the crash you heard? A. Yes.''

Thereafter counsel again took the witness and while there was elicited from the witness different distances and different points we are not to decide which version the court accepted, though we might reasonably conclude that the court accepted the answers given in direct answer to the court's questions. Therefore, the court might reasonably conclude that the Kendall car was fifty feet or even a fraction less when the brakes were applied and it might also conclude that there was some small fraction of time before the application could be effective. Going fifty-five miles per hour the car would travel more than eighty feet per second. Therefore, it could be most reasonably inferred, if, indeed, the conclusion were not compulsory, that the three cars came together within a fraction of a second. If the Russell car, which was proceeding at a speed of fifty miles per hour, struck the Gorbet car head on it would not stop immediately upon impact and turn over on its side. Similarly, if the Gorbet car struck the Russell car from the side it would not turn it over abruptly at the point of impact. To conclude that it would be wholly at variance with every known rule of physics, gravity or the laws of motion.

When the Russell car came to repose it was on the left side of the highway, whereas in its course it was traversing the right side; its front end faced the east, while in traveling that end faced north. When we consider that the Russell car and the Gorbet car were of approximately equal weight it must be apparent that the greater momentum would be with the car which had the greater speed at the time of impact. And it was a reasonable conclusion that a car just coming into the highway at right angles would have been compelled to negotiate some sort of an abrupt turn which would preclude any unusual high speed.

The Gorbet car came to rest across the highway almost directly opposite the Russell car and rested off the highway and in the ditch, which would be some fifteen or twenty feet from the center of the highway.

The Kendall car swerved to the left across the gravel shoulder and into the ditch and then continued on some

sixty feet beyond the point of impact. While the occupants of this car did not recall striking any object, the court could and did properly consider that with a car going through a three-foot ditch, while attempting to apply the brakes and control the car the journey must have been fraught with so many thrills that the striking of any one particular object would not stand out very clearly, even if the witnesses were attempting to adhere closely to the truth. And the deep dent in the steel body of the Kendall car, in which dent there were found evidences of the paint finish of the Russell car, would leave no doubt of the impact between the Kendall car and the one in which plaintiff was riding.

Considering the situation at the time of the first danger as between the Russell and the Gorbet cars there was some opportunity presented to the Russell car to avoid or at least to minimize the effect of the collision. There were eight feet of gravel shoulder and a clear road ahead. But from all of the facts the trial court was justified in believing that the Kendall car smashed into the jumble before time was afforded for anyone to act.

We hold there is sufficient in the record to support the finding that the negligence of the driver of the Kendall car operated concurrently and practically simultaneous with the negligence of the driver of the Gorbet car to produce the injuries complained of. This being true, it follows that on this ground of appeal the judgment should be affirmed. (*Sawdey* v. *Producers' Milk Co.*, 107 Cal. App. 467 [290 Pac. 684].)

We meet the claim of appellant that all of the injuries sustained by plaintiff were inflicted at the time of the first impact. In reply to this we find most fitting language in a federal decision cited as *Navigazione Libera T. S. A.* v. *Newtown Creek T. Co.*, 98 Fed. (2d) 694, wherein is found the following:

''Nobody doubts that if two tort feasors contribute to an single loss, each is liable *in solido*. . . . This result is however scarcely logical so long as the injured person has the burden of showing that the tortfeasor whom he pursues caused the damage and how much he caused. On the other hand, since it is impossible to prove what share the act of either of the tortfeasors contributed, or whether it contributed any at all, if this prevailed, each would escape—an absurd

result. To overcome this difficulty, the law imposes upon each tortfeasor the impossible burden of proof, contenting itself with limiting the injured person's total recovery to one indemnity. The situation is the same when one of the two contributing factors is not the result of actionable fault; again, the single tortfeasor cannot be allowed to escape through the meshes of a logical net. He is a wrongdoer; let him unravel the casuistries resulting from his wrong."

And so here. The appellants, wrongdoers, carry the burden of showing that no injuries resulted from their wrong and their task is to unravel the casuistries. In arguing the impossibility of doing this they concede their failure.

Appellants suggest, and merely suggest, "an additional point may be noted that the judgment runs against all of the Kendalls individually and the partnership of Kendall Bros."

We are cited to no evidence and none of the testimony on that phase of the case is indicated. The point is not urged nor is it mentioned in the statement of the questions presented upon the appeal.

The judgment is affirmed.

Tuttle, J., and Pullen, P. J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 16, 1941.