[Civ. No. 22263. Second Dist., Div. Two. Sept. 6, 1957.]

JOSEPH ERAMDJIAN, Respondent, v. INTERSTATE BAKERY CORPORATION (a Corporation) et al., Appellants.

Spray, Gould & Bowers and Charles P. Gould for Appellants.

McLaughlin & Casey and James A. McLaughlin for Respondent.

MOORE, P. J.—Defendants appeal from a judgment of $200,000 entered against them upon a verdict in an action brought by plaintiff to recover for his injuries received when run over while lying unconscious on San Fernando Road in Glendale, the result of a previous accident. He was crushed by a bakery truck operated by appellant Williams in the scope of his duties while employed jointly by appellants Interstate Bakeries and Weber Baking Company.

### THE FACTS

Respondent, aged 23, and his friend William T. Clark met at Tiny's Café in Glendale about 11 p. m. on April 18, 1954. They remained half an hour, each having consumed in that time a bottle of beer. About 11:30 Clark offered to transport plaintiff home on his motorcycle which was properly equipped for carrying a passenger. Plaintiff rode on the rear seat while Clark operated the vehicle from the front seat. They proceeded northerly on San Fernando Boulevard approximately four blocks to a point where the street curved to the left and then to the right, thereby creating an "S"

curve. As they entered the south portion of the curve, Clark was operating the machine in the lane next to the east curb. As he turned his front wheel and leaned to the left to make the turn, his motorcycle failed to respond sufficiently and struck a telephone pole just over the east curb, near the middle of the curve. Clark was hurled forward about 75 feet. Plaintiff was thrown into the street, face down in an unconscious condition, his body coming to rest eight feet west of the telephone pole, about 18 feet south of the pole and perpendicular to the curb. He suffered retrograde amnesia and had no memory of anything that happened after leaving the café until some days later at the hospital. On the night of the accident, the ornamental street lights burned until midnight, including the two lamps on the nearby standard. This standard was in the immediate vicinity of the spot where plaintiff lay on the road.

At about the same time, one Baker was riding a motorcycle in a southerly direction on San Fernando Road. As he came around the north part of the "S" curve, he saw the wrecked motorcycle, and as he looked back over his shoulder, he observed plaintiff's body lying in the street. Baker immediately stopped his vehicle, either on the double center line or slightly over it into the northbound lane. Seeing the truck of defendant Williams approaching from the south about 150 feet away, Baker attempted to signal by swinging his front wheel, thereby moving the headlight back and forth in the direction of the oncoming truck. He observed defendants' truck pull over to the right, and, thinking it was going to stop, momentarily directed his attention to traffic which might be approaching from the north. As he turned around again, he was just in time to observe the left rear dual wheels of the truck pass over the "middle" or "small of" plaintiff's back. At that time Baker was 30 or 40 feet away from where respondent lay. The accident happened about 11:45 p. m. Plaintiff suffered severe and permanent injuries which it appears will prevent him from engaging in most, if not all, gainful employment.

### Grounds for Appeal

Appellants demand reversal on the grounds of (1) insufficiency of the evidence to sustain the finding of negligence; (2) error of the court in withdrawing from the jury the pleaded defenses of contributory negligence and assumption of risk; (3) error in giving instructions which they claim

virtually directed a verdict for plaintiff; (4) error in giving instructions with respect to damages and the burden of proof with respect thereto; (5) excessive verdict.

## EVIDENCE SUFFICIENT

█ It appears that there were only two eye witnesses to the tragic accident: Baker, and the truck driver Williams. Other evidence consisted of maps, photographs of the situs, and testimony respecting the lighting conditions on the street at the time of the accident.

Williams' explanation of the scene and events is substantially as follows: He was hauling a "cleanup load" of bread from the Log Cabin Bakery to the 4-S Bakery in Glendale via San Fernando Road, travelling in a northerly direction. He had about 1,000 pounds in a one and one-half ton panel delivery truck equipped with rear dual wheels. He was driving about 30 miles per hour, the speed for which the signals were set. The weather was clear and the street dry. His headlights were on low beam which illuminated the road from 150 to 200 feet ahead. His truck was equipped with four-wheel hydraulic air brakes, in good condition. He was familiar with the road, traveled it five nights a week in the course of his employment. As he approached the intersection with Pacific Avenue at the southerly end of the "S" curve, he suddenly became aware of a motorcycle or headlight which appeared to be making a left-hand turn in front of him. The motorcycle had stopped in the northbound lane a few feet from the centerline; Williams swerved to the right and took his foot off the accelerator to slow down. He did not apply his brakes at that time. He assumed that the motorcycle was intending to make a left turn and that it was waiting for him to pass. The next thing he knew was the appearance of respondent's body on the pavement about 30 feet in front of the truck. He immediately jammed on his brakes and started sliding. He realized that if he continued in the same direction, he would hit the man with his wheels locked. He released the brakes and veered to the right, but both front and rear left wheels passed over the fallen man. He stopped his truck about four feet beyond respondent. He assumed that his own rate of speed at the time was "somewhere between 5 and 10 or 12 miles an hour." Respondent was clad in dark clothes and was lying face down. When Williams looked later, he found 15 feet of skid marks where he had

locked his wheels, but the evidence does not disclose where these skid marks were in relation to the position of respondent when first seen by the witness.

After Williams alighted from the truck, he placed flares on the highway and then ran to an emergency hospital on the east side of Pacific Avenue where he was unable to arouse anyone. He believed that on his way back to the truck he glanced at a clock on a nearby signboard and saw that it was five minutes to twelve.

The time element is important for the reason that Williams testified that six or eight blocks before he reached the scene of the accident there was a change in the street lighting on San Fernando Road; that each alternate light standard on both sides of the street went dark and that on every other light standard only one of the two light bulbs was burning when he approached the scene; that the lights on the standard immediately adjacent to respondent's body were not burning at all as he approached. He stated this change in lights occurred from ten to five minutes before twelve.

Such testimony was overcome by the following evidence: After he had run over plaintiff and put out flares, Williams and Baker went looking for a telephone whereby to call the police, to find which they had difficulty. The time at which the call reached the police station does not appear, but Officer Minker testified that he received the call on his radio from the Glendale police station at 11:59 and arrived at the scene about 12:10. Mr. Witt, senior electrical engineer for the City of Glendale, testified that the street lamps on San Fernando Road were always three-fourths turned off at midnight. With respect to the night of the accident, April 18, 1954, he brought with him two official records kept at the substation which controlled the turning on and off of the street lights on San Fernando Road. One of these records was a "system load chart" which was keyed into an electrically driven clock. It indicated the electrical load on the distributing system at all times. When the street lights on San Fernando Road were dimmed by turning off three-quarters of them, there was a marked decrease in electrical load which was displayed on the chart by means of a stylus or pen. This chart recorded that on April 18 the lights on San Fernando Road were dimmed at 12 midnight. The other record was a log sheet manually kept by the operator on duty at the substation, on which he records all his operations of turning the power on or off. Mr. Witt testified this log sheet revealed

that on April 18 the operator dimmed the San Fernando Road lights at midnight.

From this undisputed documentary evidence, coupled with other evidence as to the time of the accident, the jury experienced no difficulty in concluding that Williams' testimony was false when he said the lights had been turned off sometime before the accident. They concluded that he was attempting to establish an excuse for not seeing the prostrate man sooner that he did. Also, they evidently disbelieved his testimony as to his speed when he approached the scene of the accident. The map of the curve (Plf.Ex. 1) exposes no reason why Williams could not have seen plaintiff much sooner than he claims he did if he had been driving in a careful manner. The view was not obstructed by any curb or other object, since plaintiff was lying across the road near the middle of the curve in full view of anyone proceeding in a northerly direction on San Fernando Road as was Williams.

Whether a reasonably prudent person, driving at the speed Williams claimed to have been driving, with headlights illuminating the highway 150 to 200 feet ahead, and with the overhead street lighting which *did exist at the time of the accident*, should have seen plaintiff in time to avoid running over him was a question for the jury which, on substantial evidence, it decided adversely to defendants. It was also a question for the jury whether Williams acted as a prudent driver after he claims first to have seen plaintiff. The testimony of Baker and Williams as to the exact position of plaintiff's body on the street is in conflict, but an inspection of plaintiff's Exhibit 1 shows that under either version there was ample room for Williams' truck to go to the right or to the left of plaintiff's body without touching it.

At the trial, defendants sought to establish that Williams was not negligent because plaintiff was lying in a ''pool of darkness'' and because Williams was blinded by the reflected lights from two large signboards facing him as he came into the curve. In support of these theories, defendants called one Helin, an electrical engineer. He testified that he had measured the intensity of the light which was reflected inwardly against the face of the signboards by means of the reflector bulbs attached to them and that he had also made measurements of the lighting intensity in the center of the street immediately opposite such sign. He admitted he did not know the number of street lights which had been turned off at midnight and also that a reading of the lighting intensity

on the face of the signboard gave no indication as to the amount of light which would be reflected onto the street and hence attract the attention of any vehicular driver. Defendants' contention that Williams must have been blinded or distracted by the signboard lights is not borne out by the testimony of their expert. Furthermore, it is significant that Williams himself did not testify to being blinded or bothered by the signboard lights or any other lights.

Neither is defendants' "pool of darkness theory" supported by the evidence. Helin testified that a person standing in San Fernando Road should be able to see an object lying on the street at least 125 feet away, even after three-fourths of the street lamps had been extinguished, provided that there were contrasting colors on the object. In making that estimate, he admitted that he had not taken into consideration the additional light which would come from a motor vehicle's headlights also shining in the direction of any such person. Considering that Williams was sitting in the cab of a truck some distance above the level of the street where he had an unobstructed view, and also that all street lights were burning at the time of the accident, there is ample support for the implied finding that Williams should have seen plaintiff in time to stop or to swerve around him. He sat in the dark interior of his truck as it moved on a well-lighted street, made even more brilliant by the headlights of his own vehicle. (See *Sawdey* v. *Producers' Milk Co.*, 107 Cal.App. 467 [290 P. 684].) He was therefore able to see better than he could have seen without the benefit of the darkened cab.

Other arguments are made to show that the scene was in darkness at the time of Williams arrival at the body of respondent. But they are all annihilated by the facts above stated and by the testimony of L. C. Witt that at the time Clark's motorcycle crashed, all the street lights of San Fernando Road were ablaze. He stated from the witness stand that the lights were turned off manually at twelve every night and that two records of that event were made, one automatically, and that on the night of April 18, 1954, they went off at exactly twelve midnight. Inasmuch as the body could have been seen without the aid of headlights at any time before midnight at a distance of 125 feet, no reason appears why Williams could not have seen him and why, if driving reasonably cautiously he could not have stopped. Additionally, he disregarded the significant warning from Baker as the latter wigwagged his light as a warning to Williams.

But appellants argue that Williams was confronted with a sudden emergency lessening the degree of care required of him; that he was diverted by the well-intentioned Baker; that plaintiff was lying face down on a black asphalt-topped roadway in the middle of the night, dressed in dark clothes in a poorly lighted area and at a point where persons were not expected to be; and that because Williams did everything possible to avoid the accident, he is not guilty of negligence, as a matter of law. The first answer to this is that the jury impliedly found on substantial evidence that Williams did *not* do everything possible that a prudent driver could do under the circumstances to avoid the accident. Because the driver of a motor car is authorized to drive his machine at a given rate of speed on a smooth, well-lighted boulevard, he is not thereby relieved of his duty so to keep his car under such control that he may be able to stop or otherwise avoid an accident. (Veh. Code, § 510.) Appellant Williams did not conform with this basic rule of the road.

Furthermore, the jury was carefully and correctly instructed on the doctrine of sudden peril and that a person so confronted is not to be held to the same degree of prudence that is required of him in calmer and more deliberate moments. The jury was also instructed on the doctrine of unavoidable accident. On substantial evidence the jury rejected both these defenses. It was a question of fact for the jury, the determination of which is binding on this court. We have no power to substitute our deductions for those of the jury. (*Callahan* v. *Gray*, 44 Cal.2d 107, 111 [279 P.2d 963]; *Risley* v. *Lenwell*, 129 Cal.App.2d 608, 625 [277 P.2d 897]; *Hartzell* v. *Myall*, 115 Cal.App.2d 670, 677 [252 P.2d 676].) There is substantial evidence sustaining the finding of negligence on the part of Williams.

### CONTRIBUTORY NEGLIGENCE

Appellants contend that the court erred in giving on its own motion the following instruction:

"At the time that the Court was examining the prospective jurors, it stated that the defendants, in addition to denying that the defendant Williams was negligent, had pleaded two affirmative defenses; one that plaintiff had assumed the risk and the other that he was guilty of contributory negligence, and that the burden rested on the defendants to prove these affirmative defenses.

"The Court instructs you that there is no evidence to sup-

port the defense of assumption of the risk, and there is no evidence to show that there was any negligence on plaintiff's part that proximately contributed to cause any injuries he may have received as a result of any negligence on the part of the defendant Williams; therefore, you may not consider the defense of assumption of the risk, nor the defense of contributory negligence.''

Appellants' contention that there is evidence of contributory negligence on the part of respondent is based upon the ingenious theory that respondent, a passenger upon Clark's motorcycle, was lying in the middle of the road in an unconscious condition as a result of his own negligence, and that such negligence was a contributing proximate cause of the injuries he received when run over by defendants' truck. Appellants concede that any negligence on the part of Clark is not imputed to respondent but say: ''Viewing the evidence in the light most favorable to defendants, it is clear that the motorcycle failed to negotiate the turn because (1) the plaintiff failed to lean properly; (2) the plaintiff failed to lean because intoxicating liquors affected his faculties; (3) excessive speed (as shown by the motorcycle speedometer after the impact, the gouge marks in the asphalt surface and the physical distance which the plaintiff and Clark were thrown through the air by the impact with the post) which would require greater care and caution in control for safe operation; or (4) a combination of all or any of these reasons.''

It is undisputed that respondent suffered retrograde amnesia and has no recollection of anything that occurred after talking to the proprietor of the café on the sidewalk. He does not remember mounting the motorcycle. Under these circumstances, it is well settled that had the issue of his negligence been submitted to the jury, respondent would have been entitled to the presumption of due care. (Code Civ. Proc., § 1963, subd. 4; *Scott* v. *Burke*, 39 Cal.2d 388, 394 [247 P.2d 313], and cases cited therein. This presumption is itself evidence and unless controverted by other proof, appellants failed to carry the burden of proving contributory negligence. In other words, unless there is in the record sufficient legal evidence from which the jury reasonably could have found the presumption of due care had been overcome there was no error in taking the issue from the jury. Clearly, there is no such evidence in the record.

Appellants' theory is predicated upon the proposition that in operating a motorcycle around a curve, both the driver

and the passenger must cooperate in leaning in the direction in which the turn is to be made. Both Clark and respondent testified that such theory is correct. But conceding the point, there still is no evidence in the record that plaintiff did *not* lean properly while Clark was attempting to make the turn. Respondent was unable to testify relative to his actions at the time of the first accident or just prior thereto. But there is direct evidence from Clark that the motorcycle was leaned as far as it would go, due to the fact that the left-hand muffler scraped the pavement and prevented the machine from leaning any farther. This testimony was verified by the gouge marks on the pavement and testimony that the muffler had substance from the pavement adhering to it. It is obvious from the uncontradicted testimony and the physical evidence that nothing respondent could have done would have made the vehicle lean further. This evidence not only fails to show negligence on the part of respondent but is a strong indication that he was not negligent at all; otherwise the machine would not have leaned as far as it did.

Appellants contend that respondent's faculties were impaired by intoxicating liquor and therefore he was unable to do his proper share of controlling the motorcycle. The only evidence of intoxicating liquor is that respondent and Clark each had one bottle of beer before starting out. Appellants assume that because respondent was in the café two and one-half hours before meeting Clark, he must have consumed much alcohol. This is speculation of the sort that has no place in a legal action. All the evidence, including the testimony of respondent, is to the contrary.

Appellants contend also that the excessive speed of the motorcycle is evidence of negligence on the part of respondent which should have gone to the jury, apparently on the theory that he was jointly in control of the machine. The only two items of proof of the speed of the motorcycle are: (1) Clark's testimony that he was going about 30 miles per hour and (2) after the impact the speedometer needle was stuck at 53 miles per hour. But the officer who testified to the latter stated also that the needle did not necessarily register the speed of the vehicle at the time of impact. Because of the delicate nature of the instrument and the great shock to it, the needle could stop at any point. But even if the motorcycle had been going at an excessive speed, that would not necessarily constitute negligence on the part of the passenger. The vehicle had travelled only four blocks after starting from

the café. There is no evidence from which it could be inferred that in such short distance respondent failed to do something he should have done in the exercise of due care for the safety of his person.

Where is there any actual fact in the record from which it could be inferred that respondent was negligent in allowing himself to be thrown into the street in an unconscious condition? ▮ A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Code Civ. Proc., §§ 1958, 1960.) ▮ It is axiomatic that "an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork." (18 Cal.Jur.2d 480.) Yet that is exactly what appellants are attempting to do. The burden was upon appellants to overcome the presumption of due care to which respondent was entitled. (*Scott* v. *Burke, supra,* 39 Cal.2d 388, 394; *Davis* v. *Franson,* 141 Cal.App.2d 263, 267 [296 P.2d 600] ; *Anthony* v. *Hobbie,* 25 Cal.2d 814, 819 [155 P.2d 826].) ▮ Furthermore, in the absence of evidence of contributory negligence or assumption of the risk, it is not error to fail to instruct on such subjects. (*Harlow* v. *Van Dusen,* 137 Cal.App.2d 547, 551 [290 P.2d 911].) ▮ In fact, where there is no substantial evidence on a particular issue, the court should remove that issue from the consideration of the jury in order that they not be confused or misled. (*Chapman* v. *Pacific Electric Ry. Co.,* 85 Cal.App. 69, 74 [258 P. 1006].)

Appellants rely primarily upon *Parmenter* v. *McDougall,* 172 Cal. 306 [156 P. 460]. That case is clearly distinguishable upon its facts. There plaintiff was riding as a passenger upon a motorcycle being driven by his brother. They were travelling at a high speed toward an intersection where their view was obstructed by a wall and a high hedge and under such conditions that it could be inferred that plaintiff knew his brother intended to turn at the intersection. Under such facts the Supreme Court held that the jury could have inferred that plaintiff was negligent in not cautioning his brother to slow down and drive more cautiously. We have no such proven facts at bar. Clark admitted in his testimony that his failure to make the turn was due to his miscalculation and getting too close to the curb. Even then he thought he would make the curve until he actually struck the curb.

▮ Under all of the evidence there was no fact established from which the jury reasonably could have inferred that

plaintiff was in any way negligent or that the presumption of due care on the part of plaintiff had been overcome. The court did not err in removing this issue from the consideration of the jury.

## ASSUMPTION OF THE RISK

In urging that assumption of risk should have been presented to the jury, appellants again cry loudly to the gods of pure speculation. They assert that it is ''common knowledge that young men (especially unmarried young men) have a tendency to enjoy excesses of liquor, to enjoy the sensation of rapid travel by any manner of propulsion and generally to take more chances and be more reckless than persons of other age groups. The jury, therefore, were entitled to consider whether Clark, who was employed at a liquor store and admittedly had one beer at the 'beer parlor,' had had sufficient liquor that evening to affect his faculties. Motorcycles which are properly operated do not customarily crash into posts and whether the plaintiff assumed the risk of riding with Clark under such circumstances was a jury question.''

Whatever merit this argument might have would be applicable only in the event this were an action by plaintiff against Clark. On substantial evidence the jury found that Williams was negligent in running over plaintiff while he was lying in the street. By what stretch of the imagination can it be held that plaintiff assumed *that* risk? �switch The essential elements of the defense of assumption of risk are a person's voluntary acceptance of risk and appreciation of the magnitude of that risk. (*Hawk* v. *City of Newport Beach,* 46 Cal. 2d 213, 218 [293 P.2d 48].) ▪ A plaintiff in an action for personal injuries cannot be held to have assumed the risk unless he had actual knowledge of the danger. (*Sloboden* v. *Time Oil Co.,* 131 Cal.App.2d 557, 562 [281 P.2d 85].)

▪ There was no evidence upon which the defense of assumption of risk justifiably could have been submitted to the jury.

## NO ERROR IN INSTRUCTIONS

▪ Appellants assign as error the giving of plaintiff's instruction 21 as follows:

''A person is not excused from anticipating other people on a highway, who have an equal right to be there, even though his vision might be temporarily interfered with by glaring lights.''

They assert that it was erroneous in three respects, to wit:

it imposed upon Williams an absolute duty of discovery whereby it deprived the jury of determining the question of reasonable care under the circumstances; (2) it improperly assumed plaintiff's right to be lying face down in the street; and (3) it singles out for undue emphasis the factor of glaring lights but disregards all other material circumstances.

In support of such assignment reliance is placed on *Leader* v. *Atkinson*, 49 Cal.App.2d 265 [121 P.2d 759], where the court reversed judgment for the plaintiff because the court instructed that "it is the duty of the driver of an automobile, *where the view is obstructed*, to see persons on the road in front of his automobile." (Emphasis added.) There is no evidence here that Williams' view was obstructed. Had he been watching the highway ahead in ordinarily prudent manner of a careful driver, he would have seen the body of respondent. The instruction was evidently paraphrased from the following approved in *Hill* v. *Peres*, 136 Cal.App. 132, 137 [28 P.2d 946] : "The driver of an automobile is bound to use reasonable care to anticipate the presence on the highway of others who have equal right to be there and the fact that his vision is temporarily interfered with, either by the glaring sun or headlights, does not relieve him of that duty." Instruction 21 was, if anything, favorable to appellants in that it indicated the possibility that Williams might have been blinded by the signboard lights, which, as above shown was neither the testimony of appellants' expert nor of Williams himself. Neither was Williams' view obstructed within the purview of *Leader* v. *Atkinson, supra,* in which case the plaintiff deliberately walked across the street in front of a damaged automobile and into the path of an oncoming vehicle.

In connection with the same instruction, appellants make much of the argument that it instructed the jury that respondent had "an equal right" with driver Williams to be in the street. It has been shown above that respondent was not contributorily negligent in lying wounded where he was without fault. Conceding, *arguendo,* that he did *not* have an equal right to be there, this did not absolve Williams from driving in such a careful, prudent manner as to avoid running over respondent. ▮ Pedestrians who cross in the middle of a block do not have an equal right to be there in the path of an oncoming motorist, but it is now fairly well established that they are no longer fair game for the driver who operates his vehicle without regard for what may unexpectedly appear

in the street. ▇▇▇ Whether or not respondent had "an equal right" to be where he was, the jury found on substantial evidence that Williams was negligent in not seeing him in time to avoid running over him. There was no prejudicial error in the giving of this instruction 21 particularly in view of the fact that the jury was copiously instructed on all the elements of negligence, including the advice that failure to avoid an accident when it was possible to do so does not, of itself, justify a finding of negligence. (BAJI No. 101-E.)*

▇▇▇ Appellants assign as prejudicial error the giving of BAJI Number 140. It says in part: "General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it . . . When there is evidence to the effect that one did look, but did not see that which was in plain sight . . . it follows that either some part of such evidence is untrue or the person was negligently inattentive."

It is argued that this instruction invaded the province of the jury in assuming that respondent was "clearly visible" and "in plain sight," citing *Prato* v. *Snyder*, 12 Cal.App.2d 88 [55 P.2d 255]. But in Prato, the appellate court was obviously of the opinion that the appellant was not negligent under the evidence, saying at page 93: "A reading of the record strongly indicates, however, that the verdict of the jury was based more upon sympathy for the respondent, whose injuries were serious, than upon any evidence justifying an inference that the appellant was guilty of negligence." The court held that the instructions given in Prato, *supra*, "in effect instructed the jury that, if this appellant did not see the respondent, it was negligence on his part, as a matter of law. They leave out of consideration the fact that the respondent may have suddenly appeared on the wrong side of the highway and whether it was possible for appellant to have seen him in time to avoid the accident."

BAJI Number 140 is distinguished from the instructions given in Prato, *supra*, in *Taylor* v. *Pacific Container Co.*, 148 Cal.App.2d 505, 508 [306 P.2d 1049], where the court says: "These instructions were erroneous. The first one is similar to one disapproved in *Prato* v. *Snyder*, 12 Cal.App.2d 88 [55 P.2d 255]. It apparently made not only failure to look but failure to see, negligence as a matter of law. 'Under the

---

*California Jury Instructions, Civil. Book of approved jury instructions.

general rule the failure to look at all constitutes negligence as a matter of law, while the question of whether one who looks sees all that he should is one of fact for the jury.' [P. 97.] It *is entirely different from BAJI No. 140,* upon which it probably was intended to be based.'' (Emphasis added.)

The court herein did not take away from the jury the question whether Williams was negligent in not seeing respondent in time to avoid the accident. The court instructed the jury on unavoidable accident (BAJI No. 134); on sudden peril and the degree of care required (BAJI No. 137); burden of proof on the plaintiff (BAJI No. 115); and failure to avoid an accident when possible not, of itself, constituting negligence. (BAJI No. 101-E.) In view of the evidence and the other instructions given there was no error in giving BAJI No. 140 in the instant case.

There was no error in giving plaintiff's instruction Number 22. It says: ''The headlights on a vehicle must be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least one hundred feet ahead.'' This was a substantially correct statement of Vehicle Code, section 648, subdivision (b). *White* v. *Davis,* 103 Cal.App. 531 [284 P. 1086], relied upon by appellants is not in point. Appellants fortuitously omitted from their quotations of that case the portions of the opinion which pointed out that at that time there was no statute requiring headlights to be of sufficient intensity to reveal an object at any particular distance ahead. Such omission by counsel of unfavorable matter in cited opinions is an imposition upon the court and is not to be commended.

Appellants have failed to show any prejudice in the giving of plaintiff's instructions 25 and 46. Both instructions correctly stated the law.

Neither did any prejudice result from refusal to give defendants' instruction 138.1 which reads: ''A person, who, himself, is exercising ordinary care has a right to assume that others, too, will perform their duty under the law, and he has a further right to rely and act on that assumption. Thus it is not negligence for such a person to fail to anticipate injury which can come to him only from a violation of law or duty by another.'' There was no evidence of violation of law or duty *by the plaintiff.* Therefore, the instruction could have only confused the jury.

Finally, appellants complain of plaintiff's instruction 45: ''*As you have been previously instructed,* the fact that

two different parties may, by their separate independent negligent acts, have caused injury to a party at approximately the same time, does not excuse either of such parties from liability, even though the two separate acts of negligence may render it difficult to determine what part of the damage either party caused. The party injured need only prove the amount of damages which he has suffered, and any defendant whose negligent acts contributed to any injury cannot escape liability merely because the party injured fails to show who was responsible for any particular injury. In such instances, the burden is upon any defendant who might have contributed to such injuries by his negligent acts to ~~show~~ *prove by a preponderance of the evidence* that *no injuries or* any particular injury did not result from *the negligent acts of* that defendant but that such injury resulted from the ~~negligent~~ acts of ~~the other defendant~~ *someone else not a party to this action."* Appellants argue that because there were two separate accidents with separate injuries, plaintiff must prove the injuries caused by each of the accidents. In so contending, appellants would avoid the rulings in *Cummings* v. *Kendall,* 41 Cal.App. 2d 549, 558 [107 P.2d 282] ; *Copley* v. *Putter,* 93 Cal.App.2d 453, 457 [207 P.2d 876] ; *Hill* v. *Peres, supra,* 136 Cal.App. 132, 139, and *Sawdey* v. *Producers' Milk Co., supra,* 107 Cal. App. 467. In Sawdey the court says at page 480: "It has been held and is the law of this state that where an injury results from two separate and distinct acts of negligence by different persons operating and concurring simultaneously and concurrently, both are proximate causes and recovery may be had against either or both of the responsible persons."

In his opening statement to the jury, respondent's counsel admitted that certain head injuries received by respondent were the result of his being thrown from the motorcycle. In the course of the trial, respondent presented ample and persuasive medical testimony that all of the injuries for which he claimed damages had been caused by his being run over by Williams. Appellants attempted to counteract this evidence by testimony that the truck did not run over any portion of plaintiff's body except his right leg, despite the uncontradicted evidence that plaintiff received no injury to his right leg except that resulting from injury to the nerves in the vicinity of his crushed lumbar vertebrae. There was substantial evidence that all of respondent's injuries for which he sought damages were caused by these appellants. Even if the burden had been on respondent, there is sufficient

evidence to sustain that burden and the implied finding of the jury to that effect is binding upon the reviewing court.

But there was no error. In *Summers* v. *Tice*, 33 Cal.2d 80 [199 P.2d 1, 5 A.L.R.2d 91], where it was not known which of two hunters shot plaintiff, the Supreme Court held that the burden shifted to each of the defendants to show that it was not his gun which caused the injury. The same rule applies to the operators of automobiles. (*Copley* v. *Putter, supra,* 93 Cal.App.2d 453; *Cummings* v. *Kendall, supra,* 41 Cal.App.2d 549.) In the last cited case, the court, at pages 558, 559, quoted authority to the effect that nobody doubts that if two tort feasors contribute to a single loss, each is liable *in solido.* "This result is however scarcely logical so long as the injured person has the burden of showing that the tortfeasor whom he pursues caused the damage and how much he caused . . . the situation is the same when one of the two contributing factors is not the result of actionable fault; again, the single tortfeasor cannot be allowed to escape through the meshes of a logical net. He is a wrongdoer; let him unravel the casuistries resulting from his wrong."

So it is in the case at bar. The evidence supports the finding of the jury that Williams' negligence was the proximate cause of his truck's running over respondent and causing the injuries for which plaintiff sought damages. If any of these injuries were caused by an independent tortfeasor, it was the duty of defendants to establish that fact. There was no error in the instructions to the jury on this subject.

On oral argument before this court appellants abandoned their claim of excessiveness of damages.

Judgment affirmed.

Fox, J., concurred.

ASHBURN, J.—I concur in the judgment but I cannot endorse that part of the prevailing opinion which discusses contributory negligence and assumption of risk. It strikes a false note and injects a dissonance into the harmony of the law.

The majority are concerned with the question of whether plaintiff was guilty of negligence in the events leading up to the first accident. If plaintiff was negligent prior to that event the fact became legally inconsequential for he was lying in the highway unconscious at the time defendant's truck ran over him. Any negligence on his part had spent itself and as

a matter of law could not constitute a proximate cause of the second accident. The fact that counsel have not presented the matter from this standpoint does not make the point less obvious.

In the first accident plaintiff received a head injury when he was thrown onto the highway, and he lay unconscious when defendant's truck came along and injured him again. There were two separate accidents. After the first one was over the witness Baker came along, saw plaintiff lying in the street, saw defendant's truck approaching and attempted to signal to him through swinging the headlight of his motorcycle back and forth. This was followed by defendant Williams running over plaintiff without seeing him in time to stop.

The judge instructed the jury as follows: ". . . [T]hat there is no evidence to support the defense of assumption of the risk, and there is no evidence to show that there was any negligence on plaintiff's part that proximately contributed to cause any injuries he may have received as a result of any negligence on the part of the defendant Williams; therefore, you may not consider the defense of assumption of the risk, nor the defense of contributory negligence." This was eminently proper, for this unconscious man could not be guilty of contributory negligence, and any previous negligence on his part as a matter of law had ceased to be operative as a proximate cause of the second accident.

*Coakley* v. *Ajuria*, 209 Cal. 745 [290 P. 33], illustrates and applies the principle here involved. It was an action for the death of one Coakley, who was struck by defendant's automobile and died from the injuries thus received. Coakley was drunk. He undertook to cross the street and when he had staggered onto the far half of it he fell. "He struggled helplessly for a few seconds and finally succeeded in raising himself to his hands and knees, and while in that position he was struck by defendant driving a Paige 66-touring car." (P. 747.) Defendant was driving fast on the wrong side of the street and did not see Coakley until he was upon him and it was too late to avoid the accident. The trial court granted a nonsuit on the ground of contributory negligence. The Supreme Court, in reversing this judgment, said at page 746: "The question presented by the appeal is whether the intoxication of said John A. Coakley, deceased, was as a matter of law the proximate cause of his death, which resulted instantly

upon being struck by an automobile driven by defendant, as held by the trial court, or whether, as contended by appellant, it was the remote cause, considered in the light of the attending undisputed facts and circumstances." It was held at page 752: "A person wholly incapacitated by the excessive use of intoxicants is in a state of helplessness in the sense as though he were asleep or suffering sickness produced by any of the many causes of illness. The law looks to the condition of helplessness and not to the antecedent cause which produced it, and his impotency to care for himself does not relieve others of the duty to avoid injuring him when it can be avoided by the exercise of ordinary care. In thus guarding life and limb the law does not condone intoxication in any sense, but it imposes upon each person the duty of exercising ordinary care to the end no person whomsoever may be made to suffer an injury that could have been reasonably avoided. A remote fault in one does not dispense with care in the other. Numerous decisions and text-writers might be cited, a large number of which deal specifically with the question of contributory negligence in its relation to intoxication, but the law is so thoroughly settled that in order to constitute a bar to an action for damages it must appear that the intoxication was the immediate, concurrent and operative cause of the injury and not merely the antecedent cause. It seems unnecessary to further pursue the subject. The case should have gone to the jury." The case did not present a last clear chance situation and there was no discussion of that doctrine; the ruling turned solely on proximate cause and presents a complete analogy to the case at bar. See also *Killough* v. *Lee,* 4 Cal.App.2d 309, 314 [40 P.2d 897]; *Kline* v. *Central Pacific R. R. Co.,* 37 Cal. 400, 406-407; *Elm* v. *Bennett,* 99 Cal.App. 573, 575 [278 P. 906].

In *McKeon* v. *Steinway Ry. Co.,* 20 App.Div. 601 [47 N.Y.S. 374], it appeared that plaintiff backed his wagon in such manner that the rear end projected over defendant's eastbound railroad track; it was hit by an approaching car; the horse ran away, plaintiff was thrown from the wagon when some 200 feet from the place of collision and fell upon the same eastbound track where he lay unconscious; he was then injured by another car of defendant traveling on that track. The trial court left the question of contributory negligence to the jury. In reversing, the Appellate Division said, at page 376: " [T]he rule, about which there is no occasion for serious controversy, is that, to deny to a party relief for an injury

suffered by him by the culpable negligence of another, his negligence must not only contribute to the happening of the injury, but must contribute to it as a proximate cause. His negligence, as a remote cause, and creating a condition of peril from which he is unable to relieve himself, does not excuse the want of care in another to avoid injuring him. For the purpose of the question in the present case, it may be assumed that the plaintiff, by his negligence, resulting in the collision of the car with his wagon, was rendered helpless at another place on the defendant's railroad, where he was in a condition of danger from a passing car, from which he was unable to extricate himself. He was therefore not chargeable with contributory negligence for not getting out of the way there of an approaching car. He did not voluntarily put himself in that position. His negligence that caused him to be there was antecedent, and not concurrent or simultaneously contributory, to his injury there received.''

*Sherman* v. *Millard,* 144 Misc. 748 [259 N.Y.S. 415] (Supreme Court.) Plaintiff was riding in an automobile driven by defendant Millard when it collided with one driven by Leicht. Plaintiff was assisted out of the vehicle and taken in front of it so that the extent of her injuries might be seen. Then defendant Edick's car crashed into the rear end of Millard's, driving it forward, throwing plaintiff to the pavement and seriously injuring her. ''The finding of the jury that plaintiff was contributorily negligent in the first collision is questionable, if not clearly against the weight of the evidence. [Citation.] Defendants Leicht and Millard contend that plaintiff's contributory negligence bars her from recovery for the damages she sustained in the second collision, on the theory that it continued over and contributed to the happening of the second collision. The jury found, on sufficient evidence, that plaintiff was in a dazed condition immediately following the first collision and was unable to properly care for her own safety. This being so, her contributory negligence became remote and was not a proximate or contributing cause of the second collision, either between herself and the Millard car or between the Millard and Edick cars. She did not voluntarily place herself in front of the Millard car and was not aware that she was in that position. Her negligence was antecedent to the second collision. [Citations.] Only a responsible human being can be guilty of contributory negligence. At the time of the second impact, plaintiff was not such a being.'' (P. 421.)

The question is not one of last clear chance but solely that of proximate cause. This matter was discussed by the Connecticut Supreme Court of Errors in *Kinderavich* v. *Palmer,* 127 Conn. 85 [15 A.2d 83]. "The plaintiff brought this action to recover for injuries suffered when he was run over by a train of the railroad company represented by the defendant trustees. The finding states that he offered evidence to prove and claimed to have proved that at the place of the accident the railroad is double tracked; that he was proceeding over the tracks at a crossing; that he had passed over the westbound track and was thereafter struck by a train of the defendants on the eastbound track; that he was thrown backward and landed between the rails on the westbound track at a point thirteen feet east of the crossing; that he lay there in an unconscious condition for approximately twelve minutes on his back; and that as he lay there a train of the defendant's on the westbound track ran over him, severing his left arm at the shoulder." (P. 85.) The trial court set aside a verdict for plaintiff because of error in the instructions and this ruling was affirmed on appeal. The court said, in part: "It instructed them quite fully upon the issue of contributory negligence by the plaintiff and then charged them that if he was guilty of contributory negligence this 'would extend right through and bar a recovery.' [P. 86.] . . . Where a plaintiff has been guilty of negligence, that negligence will not defeat a recovery if it is only a remote cause of the accident. This may be so even though the conditions necessary for the application of the last clear chance doctrine are not present. We have frequently pointed out that the application of that doctrine presupposes contributory negligence on the part of the plaintiff. [Citations.] By contributory negligence we meant negligence of the plaintiff which, except for the application of the doctrine, would defeat recovery; otherwise there would be no occasion for the doctrine. Where there has been such negligence a plaintiff can recover only when the conditions which bring the doctrine into operation are present. Where, however, the negligence of a plaintiff is but a remote cause of the accident, those conditions need not be met, because he has not in law been guilty of such negligence as will defeat a recovery. Thus, if by conduct which is only a remote cause of the injury, the plaintiff has placed himself in a position of peril, it is not necessary to a recovery to prove that the defendant saw or should have discovered that this was so and that the plaintiff

either could not reasonably escape or apparently would not avail himself of the opportunities open to him to do so. [P. 88.] . . . Being unconscious, he could not be charged with negligence in failing to avoid being run over by the second train; he was not there of his own volition. [Citation.] If the jury found that the plaintiff was rendered unconscious by being struck by the first train and so remained upon the track for some minutes until run over by the second train, any negligence of which he might have been guilty in not avoiding the first train would not, at least in the absence of further circumstances, prevent his recovery for the injuries suffered from the latter train.'' (P. 90.) Clearly, any negligence of plaintiff at bar which preceded the first accident could not have been a proximate cause of his being run over by defendant's truck.

There is even less substance to the claim that plaintiff assumed the risk of that injury.

I concur in those phases of the majority opinion which are not directed to the questions of contributory negligence and assumption of risk.

A petition for a rehearing was denied September 30, 1957, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied November 5, 1957.