[Cite as *Holman v. Columbia Gas of Ohio*, 2019-Ohio-3126.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Craig L. Holman, Sr.                          Court of Appeals No. L-18-1215

    Appellant                                 Trial Court No. CI02201604576

v.

Columbia Gas of Ohio, et al.                  **DECISION AND JUDGMENT**

    Appellees                                 Decided:  August 2, 2019

* * * * *

Joseph W. Westmeyer, III, for appellant.

Brittany H. Asmus, for appellees.

* * * * *

**ZMUDA, J.**

## I.  Introduction

**{¶ 1}** Appellant, Craig Holman, Sr., appeals the judgment of the Lucas County

Court of Common Pleas, issuing a directed verdict in favor of appellees, Columbia Gas of

Ohio, Miller Pipeline Corp., and Perciles Grivanos.[1] Because we conclude that the trial court properly found that the doctrine of alternative liability is inapplicable in this case, we affirm.

## A. Facts and Procedural Background

{¶ 2} On October 7, 2016, appellant filed a pro se complaint with the trial court, alleging that he sustained injuries to his back, neck, and throat following an altercation that occurred on October 8, 2015. On February 22, 2017, appellant, through counsel, filed an amended complaint naming Columbia Gas, Miller Pipeline, Perciles Grivanos, and six John Does as defendants.

{¶ 3} According to the amended complaint, appellant was driving his vehicle in the 2100 block of Calumet Avenue in Toledo, Ohio, when he was stopped by employees of Miller Pipeline and Columbia Gas. Appellant alleged that employees of Miller Pipeline and/or Columbia Gas threw an object through his rear truck window, causing it to shatter. After he stopped his truck, appellant exited the vehicle to investigate the damage and was confronted by the employees. Appellant alleged that he was "physically assaulted and choked to the point of passing out by one of Defendant John Doe's #1 through 6 or Perciles Grivanos," and states that one of the employees "unlawfully took the keys from his vehicle thereby preventing him from leaving the scene."

---

[1] Perciles Grivanos, allegedly an employee of either Columbia Gas or Miller Pipeline, was dismissed by the trial court on directed verdict. No evidence was submitted to establish any wrongdoing committed by Grivanos, and his dismissal is not challenged by appellant in this appeal.

2.

{¶ 4} Following pretrial discovery and motion practice, a two-day jury trial commenced on September 18, 2018. At trial, appellant called Demorris Liggons, who was an eyewitness to the incident and also a resident of the area. A home surveillance video belonging to Liggons, which depicted the incident, was entered into evidence after it was authenticated by Liggons.

{¶ 5} Following Liggons' testimony, appellant took the stand. During his testimony, appellant recounted three separate instances of tortious conduct. According to appellant, the first instance of tortious conduct occurred when he turned onto Calumet and "a guy ran up and busted out [his] window." Appellant later explained that the individual that broke his window was a worker, but he could not identify whether the individual was an employee of Columbia Gas or Miller Pipeline.

{¶ 6} Next, appellant testified that a second instance of tortious conduct occurred when he was making his way back to his truck after getting out to confront the group of workers. As appellant turned toward his truck, he observed "this guy walking up to my truck taking my keys and then he took off in this direction." Once again, appellant could not identify whether the individual who took his keys was employed by Columbia Gas or Miller Pipeline.

{¶ 7} Finally, appellant testified that a third instance of tortious conduct occurred when he confronted the individual who took his keys and demanded that the keys be returned. According to appellant, the following altercation ensued:

3.

I [go] to get back in my truck and it hit me again, and I – I'm like, no, you have no right to take my keys. So I walk back up to him and I'm telling him these things, and as I turned around to walk away, you will see on the video as I turned around to walk back to my truck, that's when he reached out and grabbed me and choked me.

{¶ 8} At the close of appellant's case-in-chief, appellees moved for a directed verdict under Civ.R. 50. In support of their motion, appellees argued that appellant failed to introduce evidence to establish the identity of the tortfeasors and whether they were employees of Columbia Gas or Miller Pipeline. In response, appellant noted his testimony that each of the tortious acts committed, namely the breaking of his truck window, theft of his truck keys, and the battery, were committed by individuals who were employees of either Columbia Gas or Miller Pipeline. The trial court took the parties' arguments under advisement and asked the parties to submit authority supporting their arguments by the following morning. Thereafter, the matter proceeded to appellees' case-in-chief, during which appellees called three witnesses.[2]

{¶ 9} During appellees' case-in-chief, the trial court revisited the pending motion for directed verdict and received arguments from counsel. Appellees urged the court to grant the directed verdict because appellant failed to identify which employees were

_____

[2] The trial court's rationale for proceeding with appellees' case-in-chief without first ruling on the motion for directed verdict is unclear from the record. Whether the trial court committed error in proceeding to hear evidence from appellees without first deciding whether to grant the directed verdict is not an issue that is raised by appellant.

4.

responsible for which act of tortious conduct and whether they were employed by Columbia Gas or Miller Pipeline. According to appellees, appellant failed to establish that *both* Columbia Gas and Miller Pipeline committed tortious conduct, contending such evidence is a necessary prerequisite to the application of the doctrine of alternative liability. Appellant's counsel responded by relying upon appellant's testimony that the individuals responsible for breaking out his truck window, choking him, and taking his keys were all employees of Columbia Gas or Miller Pipeline. Upon questioning by the trial court, appellant's counsel acknowledged that he "probably" could have identified which employees committed which wrongful acts through discovery, but counsel insisted that the doctrine of alternative liability does not require such an identification.

{¶ 10} After receiving arguments from both parties, the trial court granted appellees' motion for directed verdict. In announcing its decision, the trial court stated:

> Yes, we are dealing with the matter in the context of Plaintiff having rested [his] case in chief. And I believe for Plaintiff to prevail, this Court needs to find that the alternative liability theory is applicable in this case.
>
> And in looking at the evidence in a light most favorable to Mr. Holman, a Jury would have to conclude that employees of both companies acted tortiously and the problem for the Plaintiff is he has not been able to identify which employee did what conduct. We now, having heard from the Defense case, have some clarity on that point.

5.

But the Court can't consider that information, and I think it is worth noting that Plaintiff could well have answered these questions had full discovery been afforded. But that was then, this is now.

* * *

And again, I'm finding that even in viewing the evidence in a light most favorable to Mr. Holman, he has failed to show that the conduct of both companies constituted negligence or tortious conduct.

And for that reason, along with the rationale adopted by [defense counsel] in her arguments on behalf of her clients, relative to Rule 15 regarding identifying the John Does, I am finding and it is the ruling of the Court that Plaintiff has failed in his burden of proof, that all Defendants are dismissed regarding this litigation; Plaintiff, having failed to meet the burdens established by law.

{¶ 11} Five days after announcing its decision, the trial court issued its judgment entry granting appellees' motion for directed verdict and entering judgment in favor of appellees. It is from this order that appellant now appeals.

## B. Assignment of Error

{¶ 12} On appeal, appellant assigns the following error for our review:

The Trial Court erred in its analysis of the doctrine of alternative liability by putting an extra requirement on the Plaintiff to prove who caused the damage.

## II. Analysis

{¶ 13} In his sole assignment of error, appellant argues that the trial court erred in granting appellees' motion for directed verdict after it concluded that appellant did not present sufficient evidence to support his theory of alternative liability.

{¶ 14} "Because a motion for a directed verdict presents a question of law, appellate review of a trial court's decision on the motion is de novo." *Bennett v. Admr., Ohio Bur. of Workers' Comp.*, 134 Ohio St.3d 329, 2012-Ohio-5639, 982 N.E.2d 666, ¶ 14. Under Civ.R. 50(A)(4), a motion for directed verdict should be granted if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party."

{¶ 15} The issue here is whether the evidence introduced by appellant during his case-in-chief supports the application of the doctrine of alternative liability to this case. In *Minnich v. Ashland Oil Co.*, 15 Ohio St.3d 396, 473 N.E.2d 1199 (1984), the Supreme Court of Ohio first adopted the doctrine of alternative liability that was previously articulated in 2 Restatement of the Law 2d, Torts, Section 433B(3) (1965), as follows:

> Where the conduct of two or more actors is tortious, and it is proved that harm has been caused to the plaintiff by only one of them, but there is uncertainty as to which one has caused it, the burden is upon each such actor to prove that he has not caused the harm.

7.

**{¶ 16}** Upon its adoption of the doctrine of alternative liability, the *Minnich* court noted that the plaintiff seeking to employ the doctrine must still prove "(1) that two or more defendants committed tortious acts, and (2) that plaintiff was injured as a proximate result of the wrongdoing of one of the defendants." *Minnich* at 397. The court went on to caution that alternative liability "does not apply in cases where there is no proof that the conduct of more than one defendant has been tortious." *Id.*; *see also Goldman v. Johns-Manville Sales Corp.*, 33 Ohio St.3d 40, 45, 514 N.E.2d 691 (1987) ("The key point in alternative liability, then, is that the plaintiff must still prove that all the defendants acted tortiously.").

**{¶ 17}** Several illustrations, which are based upon historical cases, are provided in the comments to 2 Restatement of the Law 2d, Torts, Section 433B(3) (1965). Some of these illustrations are particularly helpful in providing guidance as to whether application of the doctrine of alternative liability is appropriate for the facts of this case. In particular, illustration 9 provides the classic example of facts that give rise to the doctrine of alternative liability, taken from *Summers v. Tice*, 33 Cal.2d 80, 199 P.2d 1 (1948). Illustration 9 provides:

> A and B, independently hunting quail, both negligently shoot at the same time in the direction of C. C is struck in the face by a single shot, which could have come from either gun. In C's action against A and B, each of the defendants has the burden of proving that the shot did not come

8.

from his gun, and if he does not do so is subject to liability for the harm to C.

{¶ 18} A more common set of facts where the doctrine of alternative liability would apply is provided in illustration 11, which is based upon *Turner v. North American Van Lines, Inc.*, 287 S.W.2d 384 (Mo.App.1956), as follows:

> While A's automobile is stopped at an intersection, it is struck in the rear by B's negligently driven car. Immediately afterward C's negligently driven car strikes the rear of B's car, causing a second impact upon A's car. In one collision or the other, A sustains an injury to his neck and shoulder. In A's action against B and C, each defendant has the burden of proving that his conduct did not cause the injury.

{¶ 19} In each of the foregoing illustrations, the facts clearly establish tortious conduct of more than one defendant and a resulting injury to the plaintiff that could only have been caused by one of the defendants under circumstances that make it difficult or impossible for the plaintiff to prove which of the defendants is responsible for the injuries.

{¶ 20} Unlike the foregoing illustrations, appellant's evidence in this case established that each instance of tortious conduct alleged in appellant's amended complaint was committed by only one individual, whose employer appellant could only identify in the alternative. This distinction is fatal to appellant's attempt to employ the doctrine of alternative liability.

**{¶ 21}** Finally, illustration 10 of Section 433B(3), based upon *Cummings v. Kendall*, 41 Cal.App.2d 549, 107 P.2d 282 (3d Dist.1940), provides the best example of a set of facts closest to those presented here, to-wit: where a plaintiff was injured by the tortious conduct of only one of multiple defendants. It provides:

> Over a period of three years A successively stores his furniture in warehouses operated by B, C, and D. At the end of that time A finds that his piano has been damaged by a large dent in one corner. The nature of the dent indicates that it was caused by careless handling on a single occasion. A has the burden of proving whether the dent was caused by the negligence of B, C, or D.

**{¶ 22}** In this case, appellant presented evidence that one of the workers on the scene of the incident shattered the rear window on his truck, and a different worker removed the keys from the ignition of the truck, prevented him from leaving the scene, and choked him to the ground causing him to lose consciousness. Appellant introduced no evidence to demonstrate that the group of workers present on the scene coordinated or conspired to commit these tortious acts. Rather, appellant's testimony, construed in a light most favorable to him, establishes that only one worker was responsible for each instance of allegedly tortious conduct in this case. As in illustration 10 above, the harm to appellant was caused by a single actor in each instance, not by multiple actors. Thus, application of the doctrine of alternative liability is not appropriate. Rather, appellant

10.

bears the burden of identifying whether the tortious conduct was caused by an employee of Columbia Gas or Miller Pipeline.

{¶ 23} In *Peck v. Serio*, 155 Ohio App.3d 471, 2003-Ohio-6561, 801 N.E.2d 890 (10th Dist.), the Tenth District examined Peck's argument that the doctrine of alternative liability should apply where she was injured as a result of an automobile collision between a vehicle driven by Serio, in which Peck was a passenger, and a vehicle driven by another defendant, Willetha Carmichael. *Id.* at ¶ 2. Prior to the collision, Serio was attempting to make a left turn into an intersection through which Carmichael was proceeding straight. *Id.* At trial, each driver claimed that she had a green light to proceed, and Peck testified that she did not see the color of the light prior to the accident. *Id.* Therefore, "the only evidence offered as to the negligence of either driver was the testimony of each driver claiming the collision was the result of the negligence of the other." *Id.*

{¶ 24} At the close of the evidence, Peck made a motion for directed verdict, claiming that she was entitled to judgment by virtue of the doctrine of alternative liability. *Id.* at ¶ 3. The motion was denied, as was Peck's request to have the jury instructed on the doctrine, and the jury returned a verdict in favor of Serio and Carmichael. *Id.*

{¶ 25} On appeal, the Tenth District agreed with the trial court that the doctrine of alternative liability was inapplicable because there was no evidence that either defendant was responsible for the collision as only one of the two defendants could have proceeded

11.

into the intersection on a red light. *Id.* at ¶ 14. In reaching its decision, the court noted that alternative liability would only apply after Peck met her burden of proving that *both* Serio *and* Carmichael breached the duty of ordinary care. *Id.* at ¶ 13.

{¶ 26} At trial in this case, appellant could not identify the workers that committed the tortious conduct alleged in his amended complaint. When asked whether the workers were employees of Columbia Gas or Miller Pipeline, appellant merely stated that the workers were employees of one employer or the other.

{¶ 27} Even viewing this evidence in a light most favorable to appellant, the testimony provided by appellant fails to establish that *both* Columbia Gas *and* Miller Pipeline, through its employees, committed tortious conduct by engaging in any of the acts that caused injury to appellant. Having failed to demonstrate tortious conduct by both employers, appellant's burden did not shift to Columbia Gas and Miller Pipeline to disprove that their employee's negligence was a causal link to appellant's injuries. Because no evidence was introduced to identify which employer's employees were responsible for which conduct, appellant's claims against Columbia Gas and Miller Pipeline that are premised upon the theory of respondeat superior could not be established, and the trial court did not err in granting appellees' motion for directed verdict.

{¶ 28} Accordingly, appellant's assignment of error is not well-taken.

12.

### III. Conclusion

{¶ 29} In light of the foregoing, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

_____
JUDGE

Christine E. Mayle, P.J. _____

_____

Gene A. Zmuda, J. _____
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.